31 F.3d 606
 18 Employee Benefits Cas. 1593
 Richard F. KENNEDY; Coeur D'Alene M. Kennedy, his wife;
Toni K. Mahoney, Appellees,
v.
GEORGIA-PACIFIC CORPORATION; Prudential Insurance Company
of America, Appellants.
Richard F. KENNEDY; Coeur D'Alene M. Kennedy, his wife;
Toni K. Mahoney, Appellants,
v.
GEORGIA-PACIFIC CORPORATION; Prudential Insurance Company
of America, Appellees.
 Nos. 93-2728, 93-2832.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 17, 1994.
Decided July 8, 1994.
 
 Elizabeth J. Robben, Little Rock, AR, argued, for appellants.
 Dennis L. Shackleford, El Dorado, AR, argued, for appellees.
 Before FAGG, Circuit Judge, HEANEY, Senior Circuit Judge, and LOKEN, Circuit Judge.
 FAGG, Circuit Judge.
 
 
 1
 This case involves an employee benefit plan governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. Secs. 1001-1461 (1988), and administered by the employer, Georgia-Pacific Corporation. Georgia-Pacific employees and plan participants Richard F. Kennedy and his daughter, Toni K. Mahoney, were seriously injured when Kennedy's car collided with another car. As a result of injuries received in the accident, Kennedy eventually incurred nearly $94,000 in medical bills and Mahoney incurred nearly $100,000 in medical bills. The collision was the fault of the other car's driver, Robert Lewis. Lewis's liability insurance was limited to $20,000 per accident, which was divided into thirds and paid to Kennedy, Mahoney, and the estate of Lewis's passenger. Kennedy and Mahoney submitted medical claims to the plan and the plan paid Kennedy nearly $82,000 and Mahoney nearly $90,000 for medical expenses. Kennedy and Mahoney also received payments of $5000 each from Kennedy's automobile insurance carrier, Economy Fire and Casualty Company, under the policy's no-fault medical payments coverage. Mahoney received another $10,000 under her own no-fault medical payments coverage, and she used most of it to pay medical bills unpaid by the plan.
 
 
 2
 The plan then refused to pay further claims until it was reimbursed from the medical payments recovery and any underinsured motorist payments made under the Economy policy. The plan administrator interpreted the plan's exclusion of "[c]harges for services and supplies paid for by a third party or insurance company as part of a settlement [or] judgement" as permitting reimbursement of any underinsured motorist proceeds received by Kennedy and Mahoney. Thus, the plan sought to set off the amount of its payments to Kennedy and Mahoney against their future claims under the plan and also against an unrelated claim filed by Kennedy's spouse, Coeur D'Alene. Later, Kennedy and Mahoney received $165,000 and $215,000, respectively, under Kennedy's underinsured motorist coverage. They reimbursed the plan for the money received under Lewis's liability coverage and Kennedy's no-fault medical payments coverage, but refused to reimburse the plan for the money received under the underinsured motorist coverage.
 
 
 3
 The Kennedys and Mahoney (collectively the Kennedys) filed this lawsuit seeking a declaratory judgment that the plan was not entitled to reimbursement for the payments received under their underinsured motorist coverage and the plan was obligated to pay the remaining medical bills of Kennedy and his spouse. Georgia-Pacific moved for summary judgment. In ruling on the motion, the district court first decided the plan gave the plan's administrator, Georgia-Pacific, discretionary authority to administer and interpret the plan, and thus, the district court applied the abuse of discretion standard of review to Georgia-Pacific's interpretation. The district court concluded Georgia-Pacific did not abuse its discretion in interpreting the exclusion to permit reimbursement from underinsured motorist proceeds. Nevertheless, the district court concluded Georgia-Pacific abused its discretion in interpreting the exclusion to permit reimbursement from underinsured motorist proceeds that were not paid for medical expenses. The district court held that, as a matter of law, the plan was entitled to reimbursement from Kennedy's and Mahoney's underinsured motorist recoveries only to the extent the recoveries were for medical expenses. The court concluded a genuine issue of material fact existed about whether the underinsured motorist settlements included payments for medical expenses, and if so, how much. The district court thus ordered a trial on this question.
 
 
 4
 After a trial, the district court found the plan failed to prove that any of Economy's payments to Kennedy or Mahoney other than the two $5000 no-fault payments were for medical expenses. Concluding Georgia-Pacific was not entitled to reimbursement, the district court denied Georgia-Pacific reimbursement from Mahoney and an offset against the unpaid medical claims of Kennedy and his spouse. The district court entered judgment in favor of Kennedy and his spouse for their unpaid medical bills. Georgia-Pacific and the plan's claims service provider, Prudential Insurance Company of America, appeal. The Kennedys cross-appeal.
 
 
 5
 Initially, we must decide whether the district court applied the proper standard of review to the plan administrator's interpretation. The Kennedys contend the plan does not specifically grant Georgia-Pacific discretionary authority to interpret plan provisions, and thus, the district court should have reviewed Georgia-Pacific's interpretation de novo. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 956-57, 103 L.Ed.2d 80 (1989). We disagree. The plan states, "[Georgia-Pacific] shall be the Plan Administrator and shall be solely responsible for the administration and interpretation of this Plan." This language gives Georgia-Pacific both administrative and interpretive discretion. Cutting v. Jerome Foods, Inc., 993 F.2d 1293, 1295-96 (7th Cir.), cert. denied, --- U.S. ----, 114 S.Ct. 308, 126 L.Ed.2d 255 (1993); see Cox v. Mid-America Dairymen, Inc., 965 F.2d 569, 571 (8th Cir.1992). We thus decline the Kennedys' request to apply federal common-law rules of contract construction and to construe the plan strictly against the drafter. See Maxa v. John Alden Life Ins. Co., 972 F.2d 980, 983 (8th Cir.1992) (applying federal common-law rules of contract construction when plan does not give administrator discretion to construe plan's terms), cert. denied, --- U.S. ----, 113 S.Ct. 1048, 122 L.Ed.2d 357 (1993).
 
 
 6
 We review de novo the district court's application of the abuse of discretion standard to Georgia-Pacific's interpretation. Lutheran Med. Ctr. v. Contractors, Laborers, Teamsters & Eng'rs Health & Welfare Plan, 25 F.3d 616, 620-21 (8th Cir.1994). Georgia-Pacific abused its discretion in interpreting the plan if its interpretation is extremely unreasonable. Id. We have identified five factors that bear on the reasonableness of a plan administrator's interpretation: whether the interpretation contradicts the plan's clear language, whether the interpretation renders any plan language internally inconsistent or meaningless, whether the interpretation is consistent with earlier interpretations, whether the interpretation is consistent with the plan's goals, and whether the plan satisfies ERISA requirements. Id.; Finley v. Special Agents Mut. Benefits Ass'n, Inc., 957 F.2d 617, 621 (8th Cir.1992). In holding Georgia-Pacific abused its discretion, the district court did not expressly analyze all five factors, but stated Georgia-Pacific's interpretation contradicted the exclusion's clear language. The district court's analysis also suggests the court believed Georgia-Pacific's interpretation made plan language internally inconsistent.
 
 
 7
 On appeal, Georgia-Pacific contends it did not abuse its discretion in interpreting the plan to permit reimbursement from any underinsured motorist payments because its interpretation is supported by the language of the plan and the reimbursement agreements. Although the parties focus on the district court's reading of certain language and do not identify or discuss the other factors bearing on the reasonableness of Georgia-Pacific's interpretation, we have considered the factors to the extent the record permits and agree with the district court that Georgia-Pacific's interpretation is unreasonable. Assuming the plan can recover underinsured motorist payments, we conclude the plan can recover only those payments made for medical expenses.
 
 
 8
 In its exclusions from coverage, Georgia-Pacific's benefit plan excludes benefits for "[c]harges for services and supplies paid for by a third party or insurance company as part of a settlement [or] judgement." Georgia-Pacific does not challenge the district court's interpretation that "[c]harges for services and supplies" means medical expenses. Eliminating the passive voice, the exclusion's clear language permits reimbursement of only the part of insurance company settlements "paid for" medical expenses.
 
 
 9
 The only other plan language Georgia-Pacific identifies as supporting its interpretation is the plan's definition of subrogation, which states:
 
 
 10
 Subrogation is the substituting of one party for another who has a legal claim against a third party. Under this plan, the plan administrator has subrogation rights to recover the cost of medical treatment for you or your covered dependents, to the extent paid by the plan, if the illness or injury was caused by a third party. You are required to provide the plan administrator with any information needed to carry out subrogation rights.
 
 
 11
 This provision does not help Georgia-Pacific avoid the exclusion's limitation of reimbursement to insurance payments for medical expenses. Indeed, the provision cannot reasonably be read to allow subrogation of the Kennedys' claim against their underinsured motorist carrier. To permit this subrogation, the term "third party" must be given internally inconsistent meanings. In the first sentence, the term must be read as meaning the Kennedys' underinsured motorist carrier. In the next sentence, however, the term must be read as meaning Lewis, the third party who caused the injury. Further, the meaning of the term "third party" in the plan's exclusion of medical expenses "paid for by a third party or insurance company" cannot reasonably be read as meaning the Kennedys' underinsured motorist carrier without rendering the words "or insurance company" meaningless.
 
 
 12
 Georgia-Pacific primarily relies on the reimbursement agreements to support its interpretation of the plan. Although the plan did not require it, Kennedy and Mahoney each signed identical reimbursement agreements at Georgia-Pacific's request before receiving benefits. The reimbursement agreements explained, "[C]overage under the employee benefit plan ... does not cover losses caused by injury or sickness to the extent that payments are made for them by or for another person who is responsible for that injury or sickness." Kennedy and Mahoney promised to "repay the employee benefit plan if and when [they] receive[d] payment(s) for the injury from or on behalf of the responsible person." The agreements also state, "The repayment will not be more than the payment amount(s) received for the losses and only to the extent of Plan benefits for them.... This agreement applies even if the responsible person doesn't admit liability or itemize the payment(s)...."
 
 
 13
 Because the reimbursement agreements apply "even if the responsible person doesn't ... itemize the payment(s)," Georgia-Pacific argues the plan can recover any payments received by the Kennedys from their underinsured motorist carrier, without showing the payments were for medical expenses. The reimbursement agreements, however, are not part of the plan or required by the plan. See Cutting v. Jerome Foods, Inc., 820 F.Supp. 1146, 1155 (W.D.Wis.1991), aff'd, 993 F.2d 1293 (7th Cir.), cert. denied, --- U.S. ----, 114 S.Ct. 308, 126 L.Ed.2d 255 (1993); Harmond v. Teamsters Joint Council No. 83, 795 F.Supp. 783, 787 (E.D.Va.1992), aff'd, 1 F.3d 1233 (4th Cir.1993) (unpublished per curiam). Thus, Georgia-Pacific cannot rely on the reimbursement agreements to avoid the clear plan language and to support its contrary interpretation. See Serembus ex rel. UIU v. Mathwig, 817 F.Supp. 1414, 1417 (E.D.Wis.1992); Springer v. Wal-Mart Assocs. Group Health Plan, 714 F.Supp. 1168, 1175 (N.D.Ala.1989), rev'd on other grounds, 908 F.2d 897, 901-02 (11th Cir.1990).
 
 
 14
 Georgia-Pacific also suggests it is entitled to reimbursement under the reimbursement agreements because Kennedy and Mahoney agreed to "repay the employee benefit plan if and when [they] receive[d] payment(s) for [their injuries] ... on behalf of the responsible person." Georgia-Pacific asserts Kennedy and Mahoney received the underinsured motorist payments "on behalf of the responsible person," Lewis, because his inadequate liability insurance triggered Economy's payment. In our view, it is unreasonable to say the underinsured motorist proceeds were paid under Kennedy's personal insurance policy "on behalf of" Lewis, the underinsured motorist. See McIntosh v. Pacific Holding Co., 992 F.2d 882, 885 (8th Cir.) (plan language allowing recovery of settlement amounts received from third party does not encompass beneficiary's personal insurance coverage), cert. denied, --- U.S. ----, 114 S.Ct. 441, 126 L.Ed.2d 375 (1993). Instead, payments to the Kennedys under Lewis's liability coverage would be paid to the Kennedys on behalf of Lewis.
 
 
 15
 In sum, Georgia-Pacific's interpretation that the plan is entitled to reimbursement from any underinsured motorist proceeds, regardless of their purpose, contradicts the plan's clear language and results in an internally inconsistent reading of the term "third party" within the plan. We thus conclude Georgia-Pacific abused its discretion in interpreting the plan to permit reimbursement of the Kennedys' underinsured motorist proceeds.
 
 
 16
 Georgia-Pacific asserts that even if the district court correctly concluded the plan's reimbursement right is limited to underinsured motorist proceeds paid for medical expenses, the district court's finding that the Kennedy's underinsured motorist proceeds were not paid for medical expenses is clearly erroneous. We have carefully reviewed the record and find no clear error. As the district court recognized, no witness to the negotiations testified that any part of either settlement was understood to be paid for medical expenses. Further, nothing in the paperwork, including the releases, indicated Economy paid any part of the settlement for medical expenses. Finally, Economy's claims supervisor testified the underinsured motorist settlement did not include payment for medical expenses.
 
 
 17
 In their cross-appeal, the Kennedys assert the district court committed error in denying their request for prejudgment interest. Awards of prejudgment interest are discretionary under ERISA. Lutheran Med. Ctr., 25 F.3d at 623. We reverse the district court's decision to deny prejudgment interest only if the record clearly shows an abuse of discretion. See id. Because the amounts allegedly due the Kennedys under the plan were uncertain, the record does not clearly show an abuse of discretion. See Stroh Container Co. v. Delphi Indus., Inc., 783 F.2d 743, 752 (8th Cir.), cert. denied, 476 U.S. 1141, 106 S.Ct. 2249, 90 L.Ed.2d 695 (1986).
 
 
 18
 We affirm the district court.