**WAL–MART STORES, INC. ASSOCIATES' HEALTH AND WELFARE PLAN, Plaintiff,**

v.

**Jennifer Renee SCOTT, Defendant.**

**No. Civ. 98–2060.**

United States District Court,
W.D. Arkansas,
Fort Smith Division.

Sept. 1, 1998.

Michael R. Jones, Gilker & Jones, Mountainburg, AR, for plaintiff.

Robert K. Jackson, Law Offices of Gary Green, Little Rock, AR, for deft.

### MEMORANDUM OPINION

H. FRANKLIN WATERS, Senior District Judge.

This declaratory judgment action is before the court for decision pursuant to the stipulation of the parties that the court may decide the case on the basis of the stipulated record and the briefs of the parties. Plaintiff seeks a declaration that it is entitled to full reimbursement of medical benefits previously paid on defendant's behalf under an employee welfare benefit plan.

---

1. Scott's older sister was killed in the accident.

### Background.

The facts are undisputed. The plaintiff, Wal–Mart Stores, Inc. Associates' Health and Welfare Plan, is a self-funded employee welfare benefit plan governed by the Employee Retirement Income Security Act (ERISA) 29 U.S.C. 1001 *et seq.* The defendant, Jennifer Renee Scott, was at all relevant times a plan participant.

On August 3, 1995, Scott, then 18 years old, was involved in an automobile accident in which she suffered serious personal injuries requiring medical treatment.[1] The driver of the vehicle in which Scott was a passenger was John Lucas Pannell.

Pannell was without substantial assets. The total insurance proceeds available from insurance policies on the Pannell vehicle was $50,000. Southern Farm Bureau Casualty Insurance Company tendered this amount in two checks of $25,000 each made payable to Scott, her attorney, and the Plan. There was also a total of $50,000 available from the underinsured provisions of Scott's own policies. State Farm Insurance Companies tendered this amount in a check payable to Scott and her attorney.

The plan paid out medical benefits totaling $59,657.42 on behalf of Scott. The plan provides as follows:

### RIGHT TO REDUCTION AND REIMBURSEMENT

The Plan has the right to reduce or deny benefits otherwise payable by the Plan or to recover benefits previously paid by the Plan to the extent of any and all of the following payments, regardless of whether such payments are designated as payment for, but not limited to, pain and suffering, loss of income, medical benefits, or other specified damages and regardless of whether the participant has been made whole (i.e., fully compensated for his/her injuries):

—Any judgment, settlement, or any payment, made or to be made by a person considered responsible for the condition giving rise to the medical expense or by their insurers.

—Any auto or recreational vehicle insurance coverages or benefits including, but not limited to, uninsured motorist coverage.

—Business and homeowners medical liability insurance coverage or payments.

—The Plan may request that you or your covered dependent cooperate to guarantee reimbursement to the Plan from third party benefits. Failure to comply with this request will entitle the Plan to withhold benefits due you under the Plan Document. You or your covered dependents may not do anything to hinder reimbursement of overpayment to the Plan after you have accepted benefits.

Additionally, the Plan has the right to file suit on your behalf against any person or entity considered responsible for the condition giving rise to the medical expenses, to recover benefits paid or to be paid by the Plan.

Also, to aid the Plan in its enforcement of its right of recovery, reimbursement, and subrogation, the participant must, at the Plan's request, take any action, give information, and/or execute documents so required by the Plan, at its discretion. If a participant fails to comply with such request, the Plan may withhold benefits, services, payments, or credits due under the plan.

*Plan at* D–8.

■ Scott was asked to and did on September 18, 1995, execute an acknowledgment form which states: "The undersigned acknowledge that they have read the rights of reimbursement, reduction and/or general subrogation of the Wal–Mart Group Health Plan (the "Plan") as summarized in the Plan's Summary Plan Description (SPD) which has been previously distributed to each associate participating in the Plan." Scott was also notified that the "Plan requires 100% reimbursement of its' subrogation interest when payments are made on behalf of participants. It does not reduce for attorney fees and/or any other related expenses." *Plaintiff's Stipulated Record at* 156.[2]

Periodically, the plan requested updated information regarding the status of any monetary recovery as a result of the accident. At some point, Scott retained an attorney. The plan informed him that Scott has signed a subrogation agreement and that under the terms of the plan it had the right to reduce benefits to her or seek full reimbursement for any benefits paid as a result of the accident.

Scott's attorney in a letter dated August 4, 1997, discussed the accident, the death of Scott's sister, the severe nature of the injuries Scott suffered, the substantial limitation the injuries have put on her physical abilities, and the impact of this on her academic plans. Her attorney noted that the total possible recovery was realistically limited to the $100,000 in insurance coverage. He further noted that after attorney's fees and expenses ($43,200)[3] were deducted there was only $56,800 left for disbursement and there were still some outstanding medical bills. If the plan required full reimbursement, he stated that Scott would receive nothing. Given these circumstances, he asked the adminis-

---

**2.** Reimbursement and subrogation provisions are separate. While they have similar effects, they are distinct doctrines. *See e.g., Unisys Medical Plan v. Timm,* 98 F.3d 971, 973 (7th Cir.1996); *Provident Life and Accident Ins. Co. v. Williams,* 858 F.Supp. 907, 911 (W.D.Ark.1994) ("With subrogation, the insurer stands in the shoes of the insured. With reimbursement, the insurer has a direct right of repayment against the insured.").

**3.** The Plan questions the amount of fees incurred in securing a policy limit settlement given the severe and undisputed nature of Scott's injuries. The court has not been given any information on the fee arrangement Scott had with her attorney, the Law Office of Gary Green, or the expenditure of time and effort needed to secure the settlement. However, we agree with the Plan that on the surface the amount of fees and costs seems to be extremely high given the settlement achieved.

In fact, based on the obviously serious injuries and substantial medical expenses, and the lack of adequate insurance coverage, it is difficult to understand what Scott's attorneys did for their $43,200, since the stipulated facts say that both insurance carriers tendered their policy limits soon after they were notified of the injuries. That would undoubtedly have occurred if Scott had not been represented by counsel, and she would have received $100,000 instead of little over half of that.

trative committee to "earnestly consider a substantial reduction so that Jennifer can end this dark chapter of her life without medical or subrogation debt and still have a little money left over for her education." (It is interesting to note, as plaintiff did, that the Law Offices of Gary Green did not offer to give up even a small portion of their seemingly ample fee to help their client through the "dark chapter of her life.") If the matter could not be resolved, Scott's attorney noted that guidance must be sought from the courts. He indicated Arkansas law established the superiority of attorney fee liens and the Arkansas Supreme Court limited subrogation liens when a plaintiff has not been "made whole."

By letter dated August 20, 1997, Scott's attorney was notified that the administrative committee was denying the appeal. Scott was notified that the plan intended to "pursue 100% reimbursement of the subrogation interest and not to pay future medical expenses related to the accident up to the extent of the amount of the settlement."

*Discussion.*

The Plan requests a declaration that it is entitled to full reimbursement from all monies received by Scott in a judgment or settlement, without reduction for attorney's fees or costs of collection, of all funds paid on Scott's behalf as a result of the accident. In short, it asks for a declaration that it is entitled to receive the sum of $59,657.42 from Scott.

It points out, and Scott does not dispute, that the Plan commits to the discretion of the administrator the authority to interpret and apply the Plan. It also argues that the language of the reimbursement clause unmistakably obligates Scott, without exception, to fully reimburse the Plan from any proceeds she recovers from other sources. It contends ERISA preempts application of state law doctrines that would operate to relax this contractual obligation. Further it argues that the interpolation of an exception for

attorney's fees would strip the phrase "to the extent of any and all ... payments" of much of its natural meaning.

Scott makes the following arguments: (1) under Arkansas law, she is entitled to all of the settlement monies because she has incurred damages for which she has not been compensated; (2) the Plan's claim, if any, should be limited only to the checks on which its name appears since the other funds were not received from the third-party tortfeasor's insurance company but from Scott's own insurance company; (3) the Plan language should not be construed against Scott as it is a unilateral contract of insurance which afforded Scott no bargaining power in negotiating its terms; and (4) the Plan is liable for a share of the attorney's fees and expenses incurred in generating the recovery.[4]

■ Fortunately, we are not without guidance from the Court of Appeals for the Eighth Circuit. In *Waller v. Hormel Foods Corp.*, 120 F.3d 138 (8th Cir.1997) the ERISA plan also demanded full reimbursement from settlement proceeds. The Wallers, the plan participants, argued the subrogation interest was enforceable only if and after they were fully compensated for their damages. *Id.* at 139.

The Eighth Circuit rejected the application of the state law "make whole" principle to the ERISA plan noting that "ERISA preempts any state law that would otherwise override the subrogation provision in a self-insured plan such as Hormel's." *Id.* It stated that "[a] subrogation provision affects the level of benefits conferred by the plan, and ERISA leaves that issue to the private parties creating the plan." *Id.* at 140. *See also Cagle v. Bruner*, 112 F.3d 1510, 1521 (11th Cir.1997) ("Make-whole" rule is a rule of interpretation that functions as a default rule to be applied only when the plan is ambiguous).

In rejecting the Wallers' "make whole" arguments, the court stated:

4. Scott made this final argument to the Plan during the administrative process. For some reason, it appears, with the exception of a citation to an Arkansas case which discusses the issue of fees and costs, to be omitted from the

brief submitted to the court. The Plan, however, presents the argument that it is not liable for any portion of these fees or expenses. We will therefore address this issue.

The Wallers argue that we should construe the word "subrogated" in the Plan to include the make-whole principle that has been engrafted onto the subrogation clauses in insurance policies under state law. But there is good reason not to read ERISA plans like insurance policies. "The very heart of the bargain when the insured purchases insurance is that if there is a loss he or she will he made whole. The cases that originally applied subrogation to insurance contracts ... never envisioned the use of subrogation as a device to fully reimburse the insurer at the expense of leaving the insured less than fully compensated for his loss." .... Employer-funded medical benefit plans should not be viewed in this fashion.

*Id.* at 140 (citation omitted).

Scott has made no attempt to distinguish the ruling in *Waller.* In fact despite the Plan's citation to *Waller* and other federal ERISA cases on point, defendant's attorney cites not a single ERISA case, fails to discuss *Waller* at all, and fails to discuss the issue of preemption or present any substantive arguments on why Arkansas law would apply to the present situation. Rather, he merely informs the court of the general rule in Arkansas and cites to two Arkansas cases applying, or setting forth, this rule.[5]

 Clearly, Arkansas law does not apply to this situation. We reject, as did *Waller,* the application of "make whole" principle. *See also Stillmunkes v. Hy–Vee Employee Benefit Plan and Trust,* 127 F.3d 767 (8th Cir.1997). We also reject Scott's argument that the Plan is not entitled to claim a right of reimbursement from the funds paid by Scott's own insurance company as a result of the accident. The Plan clearly and unambiguously states that the right to reduction and reimbursement applies to payments of automobile insurance coverages or benefits.

The Eighth Circuit in *Waller* also addressed the argument that the Plan's recovery should be reduced by a reasonable attor-

ney's fee for obtaining the settlement. The district court had concluded as a matter of federal common law that the plan should be assessed an attorney's fee for creation of the settlement fund and that legal costs to the Wallers, not the value of the legal services to the plan, should be the governing factor in determining the amount of the fee award. *Id.* at 141.

In discussing this issue, the Eighth Circuit cited approvingly to *Ryan by Capria–Ryan v. Federal Express Corp.,* 78 F.3d 123 (3d Cir.1996) because "it properly bases the federal common law under ERISA on the terms of the particular plan at issue." *Id.* In *Ryan* the plan provided for reimbursement of 100% of the benefits paid and specifically addressed the issue of attorney's fees incurred by a beneficiary in recovering from a third party. The Third Circuit rejected the argument that the plan would be somehow unjustly enriched if it was not required to pay a pro rata share of the attorney's fees. *Ryan,* 78 F.3d at 127. The Third Circuit concluded there could be no unjust enrichment where the express terms of the plan were enforced. *Id.*

The Eighth Circuit noted that *Ryan* did not end its inquiry because the Plan at issue in *Waller* contained no provision regarding attorney's fees. *Waller,* 120 F.3d at 141. It said:

Silence on this issue is not easily construed. It may mean that the Plan should always receive 100% of its claim for reimbursement, even if that produces unfair results in a particular case, so that the Plan retains maximum control over efforts to recover from third parties. But it may also mean that the Plan will pay reasonable fees and expenses so as to encourage beneficiaries to press claims to which the Plan will be partially subrogated. **Since the Plan does not clothe its administrators with discretion to decide such issues, it is left to the courts to construe the subrogation clause *de novo.*** In these

---

5. Scott's entire brief including caption, signature, and certificate of service is less than five full pages. Almost two full pages of the brief are devoted to setting forth the general rule in Arkansas regarding subrogation interests and recit-

ing the facts of one of the two cases cited by Scott. Another page, actually about a page and a half, is spent in setting forth the facts surrounding the August 3, 1995, accident, Scott's injuries, and the creation of the $100,000 fund.

circumstances, we agree with the district court's decision to reduce Hormel's subrogation recovery by the amount of a reasonable attorney's fee.

However, we disagree with the court's decision not to base the amount of fee awarded on the value of the Wallers' legal services *to the Plan.* Focusing on that factor, the Plan contends that it would have made a claim under the American Family policies once the extent of medical benefits to be provided was better known, that the Wallers "jumped the gun" primarily to litigate the priority issue with Hormel, and that they obtained a policy limits settlement with little effort. If true, that is certainly relevant to the question of the value of their legal services to the Plan. *Compare Pena v. Thorington,* 23 Wash. App. 277, 595 P.2d 61, 64 (1979); *Barreca v. Cobb,* 668 So.2d 1129, 1132 (La.1996). In this case, where the Plan's subrogation interest is a very large percentage of the American Family policy limits, reducing the Plan's claim by more than the amount it would have expended to create the settlement fund distorts the subrogation clause and expands this employee medical benefit beyond the confines of the Plan. Therefore, a contingent fee award would not be appropriate absent evidence that the Plan would have hired counsel on this basis, and an award based on counsel's actual time devoted to the matter must exclude time devoted to the Wallers' dispute with the Plan.

*Waller,* 120 F.3d at 141–42 (emphasis added). *See also McIntosh v. Pacific Holding Co.,* 120 F.3d 911 (8th Cir.1997).

■ In this case, the Plan does not expressly address the question of attorney's fees incurred by a beneficiary in recovering from a third party. However, it is undisputed that the plan gives the administrator "discretionary authority to resolve all questions concerning the administration, interpretation, or application of the Plan" and it is undisputed that Scott was notified, at the time she signed the right to reimbursement acknowledgment, that no adjustment would be made for attorney's fees. Our review, therefore, is limited to the question of whether the administrator abused his discretion in deciding that the Plan's provisions call for full reimbursement with no reduction for attorney's fees and costs.

The Eighth Circuit Court of Appeals has held that the proper standard for deferential review is an abuse of discretion rather than the arbitrary and capricious standard. *Cox v. Mid–America Dairymen, Inc.,* 965 F.2d 569, 572 n. 3 (8th Cir.1992). However the Eighth Circuit has also noted that the two standards actually differ in name only, *Lutheran Medical Center of Omaha, Neb. v. Contractors, Laborers, Teamsters and Engineers Health and Welfare Plan,* 25 F.3d 616, 620 n. 2 (8th Cir.1994), and the court does not appear to adhere to either terminology. *Collins v. Central States, Southeast and Southwest Areas Health & Welfare Fund,* 18 F.3d 556, 559 (8th Cir.1994).

In view of our conclusion, judicial review of the plan's interpretation is limited to the question of whether the administrator's interpretation is an abuse of discretion. *Kennedy,* 31 F.3d at 609. The Eighth Circuit has "variously defined an interpretation that would be an abuse of discretion as being 'extremely unreasonable,' 'virtually' the same as arbitrary and capricious, and 'extraordinarily imprudent.'" *Shell v. Amalgamated Cotton Garment,* 43 F.3d 364 (8th Cir.1994) (internal citations omitted), *citing, Kennedy,* 31 F.3d at 609; *Lutheran Medical Center,* 25 F.3d at 620 n. 2; *Cox,* 965 F.2d at 572.

■ "The proper inquiry under the deferential standard is whether 'the plan administrator's decision was reasonable; *i.e.* supported by substantial evidence.'" *Cash v. Wal–Mart Group Health Plan,* 107 F.3d 637, 641 (8th Cir.1997) (*quoting Donaho v. FMC Corp.,* 74 F.3d 894, 899 (8th Cir.1996)). "While the word 'reasonable' possesses numerous connotations, this Court has rejected any such definition that would 'permit a reviewing court to reject a discretionary trustee decision with which the court simply disagrees[.]'" *Cash,* 107 F.3d at 641 (citation omitted). A decision is reasonable "if 'a reasonable person could have reached a similar decision, given the evidence before him, not that a reasonable person would have reached that decision.' If the decision is supported

by a reasonable explanation, it should not be disturbed, even though a different reasonable interpretation could have been made." *Cash,* 107 F.3d at 641 (citation omitted).

 In cases in which the administrator has such discretion the court may not apply "federal common-law rules of contract construction and may not construe the plan strictly against the drafter." *Kennedy v. Georgia–Pacific Corp.,* 31 F.3d 606, 609 (8th Cir.1994). The court is not free to develop its own interpretation of a policy term or provision. *Bernards v. United of Omaha Life Ins. Co.,* 987 F.2d 486, 488 (8th Cir.1993) Rather, if the administrator "fails to give an adequate explanation of how it has construed the plan and applied it to the facts of a particular claim, the reviewing court must seek a fuller explanation from the administrator and then apply the deferential standard of review on an adequate record to determine whether the decision is extraordinarily imprudent or extremely unreasonable." *Id.* (citation and internal quotation marks omitted). "[T]he common rule of construction that ambiguous language in an insurance policy is construed against the insurer has no place in the construction of an ERISA plan." *Id.,* at n. 1. *See also Kennedy v. Georgia–Pacific Corp.,* 31 F.3d 606, 609 (8th Cir.1994); *Meester v. IASD Health Services Corp.,* 963 F.2d 194, 197 (8th Cir.1992); *Brewer v. Lincoln Nat. Life Ins. Co.,* 921 F.2d 150, 153 (8th Cir.1990).

The Eighth Circuit has identified five factors that bear on the reasonableness of a plan administrator's interpretation: (1) whether the interpretation contradicts the plan's clear language; (2) whether the interpretation renders any plan language internally inconsistent or meaningless; (3) whether the interpretation is consistent with earlier interpretations; (4) whether the interpretation is consistent with the plan's goals; and (5) whether the plan satisfies ERISA requirements. *Kennedy v. Georgia–Pacific Corp.,* 31 F.3d 606, 609 (8th Cir.1994); *Finley v. Special Agents Mut. Benefit Ass'n, Inc.,* 957 F.2d 617, 621 (8th Cir.1992).

 In light of these principles, we reject Scott's argument that the plan language should be construed in her favor or against the Plan because she had no bargaining power. We turn to the remaining issue of whether the Plan is liable for some portion of the attorney's fees and costs.

In *Bollman Hat Co. v. Root,* 112 F.3d 113 (3d Cir.1997) the Third Circuit once again addressed the issue of whether a plan participant could withhold attorney's fees when the plan required full reimbursement. *Id.* at 116. In that case Bollman sought full reimbursement from Root under a Plan which provided:

> In the event of any payment under the Plan to any covered person, the Plan shall, to the extent of such payment, be subrogated, unless otherwise prohibited by law, to all the rights of recovery of the covered person arising out of any claim or cause of action which may accrue because of alleged negligent conduct of a third party. Any such covered person hereby agrees to reimburse the Plan for any payments so made hereunder out of any monies recovered from such third party as the result of judgment, settlement, or otherwise....

*Bollman,* 112 F.3d at 114. Bollman contended the terms of the Plan required full reimbursement and did not allow Root to withhold money for attorney's fees. *Id.* at 115.

Root argued the subrogation provision was ambiguous and did not require full reimbursement. The Third Circuit rejected the argument. It noted that the Plan:

> requires reimbursement of "any payments" made by the Plan to a participant, and provides for subrogation to "all [of Root's] rights of recovery." As used in the plan, the words "any" and "all" both mean "the whole of" or "every." *Black's Law Dictionary* 74, 94 (6th ed.1990).

*Id.* at 116.

Root then argued the reimbursement agreement he signed was ambiguous because it did not specifically address attorney's fees. *Id.* at 117. The Third Circuit also rejected this argument, noting that the agreement required reimbursement "up to the amount of such benefits paid." *Id.* It stated that a "plan or agreement need not specifically address attorney's fees in order to unambiguously require full reimbursement." *Id.*

Finally, Root argued that under the common law a subrogee may not recovery more than a subrogor. *Id.* at 117. The court construed this argument to be for a "pro rata reduction of the Plan's subrogation lien, i.e. the Plan's recovery should be limited, as Root's recovery was limited, by a pro rata portion of the attorney's fees." *Id.* at 118 (citation omitted).

The court rejected this argument also noting that:

ERISA is silent on the issue of subrogation. We may adopt a common law principle only if "necessary to fill in interstitially or otherwise effectuate the statutory pattern enacted in the large by Congress." Otherwise, we may not create substantive ERISA rights.

Root has not established that full reimbursement of subrogation claims conflicts with ERISA's policies or that adoption of a pro rata reduction is necessary to effectuate these policies. In fact, the policies underlying ERISA generally counsel reliance on unambiguous plan language. Although circumstances may arise necessitating a pro rata reduction in reimbursement, we find Root's argument in this case unconvincing.

*Id.* at 118 (citations omitted).

In this case, the provision at issue gives the Plan the right of recovery to the "extent of any and all" payments recovered from identified sources. It makes clear that the attempted designation of the payments for specified types of damages would not prevent the Plan's full recovery and specifies that the right exists regardless of whether or not the participant is made whole.

A fair interpretation of this language would be that full reimbursement is required without reduction for attorney's fees or costs. There is nothing in the Plan that qualifies the right to reimbursement by the attorney's fees or costs, if any, expended or incurred, in obtaining recovery of amounts subject to that right. It would have, of course, been better had the Plan spelled this out in very specific language. Nevertheless, where a plan is clear and unambiguous we cannot apply a common law rule of interpretation. Rather, the straightforward language of the plan should be given its natural meaning. Under the language contained in the Plan the administrator's interpretation that the right to reimbursement is not subject to reduction by Scott's attorney's fees and costs in obtaining the insurance settlement is reasonable.

This interpretation does not contradict the language of the Plan or render any of its language internally inconsistent or meaningless. Scott has presented nothing to show that this interpretation was inconsistent with earlier interpretations. As the Plan argues, this interpretation is consistent with the Plan's goals and it appears, from what is before the court, that the Plan satisfies all ERISA requirements. Thus, application of the five *Finley* factors supports the conclusion that the Plan administrator's interpretation is reasonable.

### Conclusion.

For the reasons stated, we find the decision of the administrator to have been reasonable. Accordingly, the Plan is entitled to a declaratory judgment that its right to reimbursement is not subject to reduction for attorney's fees and costs. A separate order in accordance herewith will be concurrently entered.