**Sharon A. MAHON, n/k/a Sharon A. Guthrie, Plaintiff,**

v.

**ST. LUKE'S HEALTH SYSTEMS INC., and St. Luke's Regional Medical Center, Defendants.**

**No. C01–4033–MWB.**

United States District Court,
N.D. Iowa,
Western Division.

Feb. 21, 2002.

---

997

Brien P O'Brien, O'Brien Law Office, Sioux City, IA, for Sharon A Mahon nka Sharon A Guthrie, plaintiffs.

Christopher R Hedican, Baird Holm McEachen Pedersen, Hamann & Strasheim, Omaha, NE, for St Lukes Health System, St Lukes Regional Medical Center, defendants.

MEMORANDUM OPINION AND ORDER REGARDING PARTIES' CROSS–MOTIONS FOR SUMMARY JUDGMENT

BENNETT, Chief Judge.

TABLE OF CONTENTS

I. INTRODUCTION AND BACKGROUND ....................................998
   A. Procedural Background ..............................................998

B.   Factual Background .............................................998

II.  LEGAL ANALYSIS......................................................1000
     A.   Standards For Summary Judgment ....................................1000
     B.   Standard Of Review ..............................................1001
     C.   St. Luke's Interpretation Of The Plan ................................1002
     D.   Analysis of Shell Factors ..........................................1003
          1.   Interpretation consistent with clear language of the Plan ..............1003
          2.   Interpretation renders plan language internally inconsistent ...........1004
          3.   Interpretation consistent with earlier interpretations ..................1004
          4.   Interpretation of the Plan consistent with its goals ....................1004
          5.   Interpretation of the Plan consistent with ERISA .....................1004

III. CONCLUSION ......................................................1004

## I.   INTRODUCTION AND BACKGROUND

### A.   Procedural Background

On February 19, 2000, plaintiff Sharon A. Mahon filed a petition in the Iowa District Court In And For Woodbury County against defendants St. Luke's Health Systems, Inc. and St. Luke's Regional Medical Center (collectively "St. Luke's") to recover disability retirement benefits from her former employer. Specifically, plaintiff Mahon asserts Iowa common law claims for breach of contract and a declaratory judgement that St. Luke's is in breach of contract. Defendant St. Luke's removed this case to this court on April 6, 2001, pursuant to 28 U.S.C. § 1441, asserting that plaintiff Mahon's claim is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* On April 6, 2001, defendant St. Luke's filed its answer. Defendant St. Luke's has filed a motion for summary judgment in which it asserts that its determination to deny plaintiff Mahon disability retirement benefits was a reasonable interpretation of St. Luke's eligibility requirements under its retirement plan. In response, plaintiff Mahon has filed a cross-motion for summary judgment in which she asserts that St. Luke's's interpretation of its retirement plan is unreasonable. St. Luke's has filed a timely resistance to plaintiff Mahon's cross-motion for summary judgement. The court turns first to a discussion of the undisputed facts as shown by the record and the parties' submissions, then to consideration of the standards applicable to motions for summary judgment, and, finally, to the legal analysis of whether either party is entitled to summary judgment.

### B.   Factual Background

The record reveals that the following facts are undisputed. Plaintiff Sharon A. Mahon was employed by St. Luke's Regional Medical Center from 1970 through 1982. St. Luke's Health Systems, Inc. subsequently became the successor employer and plan administrator for St. Luke's Regional Medical Center. St. Luke's Regional Medical Center no longer exists as a separate entity.

St. Luke's Health Systems, Inc. sponsored a retirement plan, entitled "St. Luke's Health Systems, Inc. Retirement Plan." ("The Plan"). The Plan is an employee welfare benefit plan as defined by ERISA. The Plan was governed by an initial plan document dated 1976. The 1976 Plan document provided for disability benefits, stating in relevant part:

A participant shall be eligible to receive a Disability Retirement benefit if he is retired from employment with the Hospital before his normal Retirement Date because of a disability provided he has 10 years of Vesting Service. The amount of benefit shall be equal to his Accrued Benefit.

The 1976 Plan, Pl.'s ex. B., § 4.4, p. 18, App. at 11. The term "disability" is defined as:

> The term "Disability" means a total incapacity resulting from an unavoidable bodily injury or disease, which has continued for at least six (6) consecutive months and which will presumably be permanent and prevent the employee from engaging in any occupation or employment for remuneration or profit, as determined by the Hospital on the basis of medical evidence satisfactory to the Hospital. Any injury or disease shall be considered avoidable if it is a result of self-infliction by the employee, addiction to narcotics, alcoholism, war, insurrection, riot, willfully and illegally engaging in any felonious criminal act, or service in the armed forces of any country. The employee must also be eligible to receive disability benefits under the Federal Social Security Act, as amended, to have a Disability, but eligibility for such benefits shall not, by itself, be determinative of Disability under this plan.

The 1976 Plan, Pl.'s ex. B., § 2.11, p. 6, App. at 9.

In construing the 1976 Plan, St. Luke's has previously determined that an employee needs to retire from employment with it because of disability to qualify for retirement benefits. St. Luke's has consistently refused to allow a past employee to recover disability retirement benefits where the former employee has become disabled after leaving St. Luke's employment.

The 1976 Plan was amended effective July 1, 1993. The 1993 Plan document incorporated prior Plan documents, including the disability retirement benefits. The 1993 Plan document provides:

> The retirement and other benefits provided under the Plan for or with respect to any employee who retired and whose employment with the Employer otherwise terminated prior to the Amended

Effective Date shall be governed in all respects by the terms of that Plan as in effect on the date of his retirement or other termination of employment, subject to any adjustment or change in said retirement benefits that may result from any amendment or change in said retirement benefits that may result from any amendment made to the Plan or this Plan.

The 1993 Plan, Pl.'s ex. A., § 1.6, p. 1, App. at 1. The 1993 Plan defines the "Plan Administrator" as "the Employer." The 1993 Plan, Pl.'s ex. A., § 2.38, p. 9, App. at 4. The 1993 Plan defines "the Employer" as "St. Luke's Health Systems, Inc. or its successor(s), and each subsidiary or affiliate hereof which adopts this Plan with the consent of the Board." The 1993 Plan, Pl.'s ex. A., § 2.11, p. 4, App. at 2.

The 1993 Plan provides that the Employer shall have the following powers and duties:

> The Employer shall have such other discretion, duties and powers, and the maximum discretion as permitted by law, as may be necessary or appropriate to discharge its duties hereunder, including but not by way of limitation, the following:
>
> (a) to construe and interpret the Plan, decide all questions of eligibility and determine the amount, manner and time of payment of any benefits hereunder;
>
> (b) to prescribe procedures to be followed by Participants or Beneficiaries filing applications for benefits;
>
> (c) to prepare and distribute, in such manner as it determines to be appropriate, information explaining the Plan;
>
> (d) to receive from Participants such information as shall be necessary for the proper administration of the Plan;

(e) to receive and review the periodic valuation made by the Actuary;

(f) to receive, review and keep on file (as it deems convenient and proper) reports of the financial condition, and of the receipts and disbursements, of the Trust Fund from the Trustee;

(g) to appoint and employ individuals to assist in the administration of the plan and any other agents it deems advisable.

The 1993 Plan, Pl.'s ex. A., § 13.4, p. 41, App. at 7.

St. Luke's Benefit/Compensation Specialist is responsible for the processing of a claim for Plan benefits and makes the initial decision whether to approve or deny a claim. St. Luke's three pension plan trustees are responsible for considering a claimant's request for review of a denied claim.

Plaintiff Mahon became a participant of the Plan in 1970. She terminated her employment with St. Luke's in May 1982. Plaintiff Mahon did not quit her employment with St. Luke's because of a disability.

In June of 1999, plaintiff Mahon was diagnosed with Myasthenia Gravis. She was declared disabled by the Social Security Administration on October 23, 1999. Plaintiff Mahon became eligible for Social Security benefits beginning in April 2000. In April 2000, plaintiff Mahon made a claim for payment of disability retirement benefits to St. Luke's Human Resource Office. In April 2000, Tami Malcom, St. Luke's Benefit/Compensation Specialist informed Mahon in a telephone call that Mahon was not qualified to receive disability retirement benefits because she was not still employed by St. Luke's and had not retired from her employment at St. Luke's due to a disability. On June 24, 2000, plaintiff Mahon appealed the denial of her claim for disability retirement benefits. On July 19, 2000. St. Luke's Pension Plan Trustees denied plaintiff Mahon's claim for disability retirement benefits on the ground that she did not leave her employment at St. Luke's due to a disability.

## II. LEGAL ANALYSIS

### A. Standards For Summary Judgment

This court has considered in some detail the standards applicable to motions for summary judgment pursuant to FED. R. CIV. P. 56 in a number of prior decisions. *See, e.g., Swanson v. Van Otterloo,* 993 F.Supp. 1224, 1230–31 (N.D.Iowa 1998); *Dirks v. J.C. Robinson Seed Co.,* 980 F.Supp. 1303, 1305–07 (N.D.Iowa 1997); *Laird v. Stilwill,* 969 F.Supp. 1167, 1172–74 (N.D.Iowa 1997); *Rural Water Sys. # 1 v. City of Sioux Ctr.,* 967 F.Supp. 1483, 1499–1501 (N.D.Iowa 1997), *aff'd in pertinent part,* 202 F.3d 1035 (8th Cir.2000), *cert. denied,* 531 U.S. 820, 121 S.Ct. 61, 148 L.Ed.2d 28 (2000); *Tralon Corp. v. Cedarapids, Inc.,* 966 F.Supp. 812, 817–18 (N.D.Iowa 1997), *aff'd,* 205 F.3d 1347 (8th Cir.2000) (Table op.); *Security State Bank v. Firstar Bank Milwaukee, N.A.,* 965 F.Supp. 1237, 1239–40 (N.D.Iowa 1997); *Lockhart v. Cedar Rapids Community Sch. Dist.,* 963 F.Supp. 805 (N.D.Iowa 1997). Thus, the court will not consider those standards in detail here. Suffice it to say that Rule 56 itself provides, in pertinent part, as follows:

Rule 56. Summary Judgment

(a) For Claimant. A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

FED. R. CIV. P. 56(a)-(c) (emphasis added). Applying these standards, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.,* 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). As to whether a factual dispute is "material," the Supreme Court has explained, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Beyerbach v. Sears,* 49 F.3d 1324, 1326 (8th Cir.1995); *Hartnagel,* 953 F.2d at 394. If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *In re Temporomandibular Joint (TMJ) Im-*

*plants Prod. Liab. Litig.,* 113 F.3d 1484, 1492 (8th Cir.1997). In reviewing the record, the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co.,* 475 U.S. at 587; *Quick,* 90 F.3d at 1377 (same). With these standards in mind, the court turns to consideration of the parties' cross-motions for summary judgment.

### B. Standard Of Review

A court normally gives trustees considerable leeway to interpret and to apply plan rules, setting aside those trustee decisions only if they are arbitrary, capricious, or an abuse of discretion. *Baxter v. Lynn,* 886 F.2d 182, 187 (8th Cir.1989). The United States Supreme Court, however, has instructed that this deferential standard of review is appropriate only where the "benefit plan" itself gives the trustees "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *see Riedl v. Great Am. Life Ins. Co.,* 248 F.3d 753, 755 (8th Cir.2001); *Lynn,* 886 F.2d at 187. In *Bruch,* the Supreme Court held that, under ERISA, absent the express delegation of discretion to a plan trustee, a court should conduct a *de novo* review of the trustee's benefit determination. *Bruch,* 489 U.S. at 115; *Riedl,* 248 F.3d at 755; *see Jacobs v. Pickands Mather & Co.,* 933 F.2d 652, 656 (8th Cir.1991). St. Luke's contends that the Plan provides it with the "discretionary authority" to determine eligibility or construe the terms of the Plan and therefore the court's review here is under the abuse of discretion standard.

■ Here, the Plan gives St. Luke's the authority to interpret the Plan's provisions:

The Employer shall have such other discretion, duties and powers, and the maximum discretion as permitted by law, as may be necessary or appropriate to discharge its duties hereunder, including but not by way of limitation, the following:

(a) to construe and interpret the Plan, decide all questions of eligibility and determine the amount, manner and time of payment of any benefits hereunder;

The 1993 Plan, Pl.'s ex. A., § 13.4, p. 41, App. at 7. The Eighth Circuit Court of Appeals has held that a district court should review ERISA governed plans under a "deferential abuse of discretion" standard where the plans have contained language comparable to that found in the Plan at issue. *See Shell v. Amalgamated Cotton Garment & Allied Indus. Fund*, 43 F.3d 364, 366 (8th Cir.1994) (insurance contract provided that the board of trustees of the plan "shall have the exclusive right to interpret any and all of the provisions of this Plan and to determine any questions arising thereunder or in connection with administration of this Plan."); *Cox v. Mid–America Dairymen*, 13 F.3d 272, 274 (8th Cir.1993) ("In case of any factual dispute hereunder, the Retirement Committee shall resolve such dispute giving due weight to all evidence available to it. The Retirement Committee shall interpret the Plan and shall determine all questions arising in the administration, interpretation and application of the Plan."); *Brumm v. Bert Bell NFL Retirement Plan*, 995 F.2d 1433, 1437 (8th Cir.1993) (giving the Board discretionary power "to define and amend the terms of the Plan and Trust, to construe the Plan and Trust and to reconcile inconsistencies therein."). As the Plan contains an express delegation of discretion to St. Luke's, the court will employ the abuse of discretion standard here in reviewing St. Luke's interpretation of the Plan. The Eighth Circuit Court of Appeals has defined an interpretation that would be an abuse of discretion as

being "extremely unreasonable," [*Kennedy v. Georgia–Pacific Corp.*, 31 F.3d 606, 609 (8th Cir.1994)]; "virtually" the same as arbitrary and capricious, *Lutheran Medical Center v. Contractors, Laborers, Teamsters, and Engineers Health and Welfare Plan*, 25 F.3d 616, 620 n. 2 (8th Cir.1994); and " 'extraordinarily imprudent,' " *Cox v. Mid–America Dairymen, Inc.*, 965 F.2d 569, 572 (8th Cir.1992), quoting G.G. Bogert and G.T. Bogert, *The Law of Trusts and Trustees* § 560 at 204 (rev.2d ed.1980).

*Shell v. Amalgamated Cotton Garment*, 43 F.3d 364, 366 (8th Cir.1994).

### C. St. Luke's Interpretation Of The Plan

■ St. Luke's interprets the disability retirement benefits provision of the Plan as requiring that to be eligible to receive disability retirement benefits, an individual must have ten years of vesting service, be in receipt of disability benefits from Social Security, and retire from employment from St. Luke's because of a disability. The Eighth Circuit Court of Appeals has instructed that:

In determining whether that interpretation is an abuse of the plan's discretion, we consider "whether the interpretation contradicts the plan's clear language, whether the interpretation renders any plan language internally inconsistent or meaningless, whether the interpretation is consistent with earlier interpretations, whether the interpretation is consistent with the plan's goals, and whether the plan satisfies ERISA requirements."

*Shell*, 43 F.3d at 366 (quoting *Kennedy v. Georgia–Pacific Corp.*, 31 F.3d 606, 609 (8th Cir.1994)); *accord Cooper Tire & Rubber Co. v. St. Paul Fire & Marine Ins. Co.*, 48 F.3d 365, 371 (8th Cir.), *cert. de-*

*nied,* 516 U.S. 913, 116 S.Ct. 300, 133 L.Ed.2d 205 (1995); *see Cash v. Wal–Mart Group Health Plan,* 107 F.3d 637, 641 (8th Cir.1997) (interpreting plan in context of a denial of benefits claim); *Buttram v. Central States, S.E. & S.W. Areas Health & Welfare Fund,* 76 F.3d 896, 901 (8th Cir. 1996) (same); *Donaho v. FMC Corp.,* 74 F.3d 894, 897 (8th Cir.1996) (same); *Lickteig v. Business Men's Assur. Co. of Am.,* 61 F.3d 579, 584 (8th Cir.1995) (same); *Lutheran Medical Ctr. v. Contractors, Laborers, Teamsters and Engineers Health and Welfare Plan,* 25 F.3d 616, 620 (8th Cir.1994) (same); *Brumm v. Bert Bell NFL Retirement Plan,* 995 F.2d 1433, 1438 (8th Cir.1993) (same); *Finley v. Special Agents Mut. Benefit Ass'n,* 957 F.2d 617, 621 (8th Cir.1992) (same). Therefore, the court will apply the "abuse of discretion" standard of review and examine St. Luke's decision that the Plan's disability retirement benefits provision requires that, to be eligible to receive disability retirement benefits, an individual must have ten years of vesting service, be in receipt of disability benefits from Social Security, and retire from employment from St. Luke's because of a disability.

### D.   Analysis of Shell Factors

#### 1.   Interpretation consistent with clear language of the Plan

■   The first *Shell* factor the court will consider is whether St. Luke's interpretation of the Plan contradicts clear language in the Plan. *See Shell,* 43 F.3d at 366; *see also Cash,* 107 F.3d at 641; *Buttram,* 76 F.3d at 901; *Donaho,* 74 F.3d at 897; *Lickteig,* 61 F.3d at 584; *Cooper Tire & Rubber Co.,* 48 F.3d at 371; *Kennedy,* 31 F.3d at 609; *Lutheran Medical Ctr.,* 25 F.3d at 620; *Finley,* 957 F.2d at 621. Plaintiff Mahon asserts that the language of the Plan "says nothing about specifically retiring from St. Luke's." Plaintiff's Br. In Support Of Pl.'s Mot. For Summary Judgment at p. 4. With respect to the question of eligibility for disability retirement benefits, the Plan provides that:

> A participant shall be eligible to receive a Disability Retirement benefit if he is retired from employment with the Hospital before his normal Retirement Date because of a disability provided he has 10 years of Vesting Service. The amount of benefit shall be equal to his Accrued Benefit.

The 1976 Plan, Pl.'s ex. B., § 4.4, p. 18, App. at 11.

St. Luke's interprets the Plan's disability retirement benefits eligibility provision as requiring an individual to retire from employment from St. Luke's because of a disability. The court does not find St. Luke's interpretation contrary to the clear language of the Plan. The Plan specifically sets forth that an individual is eligible for disability retirement benefits *"if* he is retired *from* employment with the Hospital *before* his normal Retirement Date *because* of a disability . . ." The 1976 Plan, Pl.'s ex. B., § 4.4, p. 18, App. at 11 (emphasis added). It is thus clear that to be eligible for disability retirement benefits under the Plan an individual must be retired from St. Luke's because of a disability. As St. Luke's cogently points out in its brief in support of its motion for summary judgment, plaintiff Mahon's interpretation of the Plan's disability retirement benefits provision renders the phrase "from employment with the hospital" nugatory. While the Plan does not explicitly state that disability benefits are not available to employees who become disabled after they leave St. Luke's employment, no other reading of the Plan is plausible. There is nothing in the Plan's language that could reasonably lead an individual to believe that disability retirement benefits continue to be available to an employee for a disability that develops after that employee's employment with St. Luke's has ended.

Therefore, the court concludes that St. Luke's interpretation of this provision is not contrary to the clear language of the Plan.

### 2. Interpretation renders plan language internally inconsistent

The second *Shell* factor requires the court to consider whether St. Luke's interpretation renders any language of the Plan meaningless or internally inconsistent. *See Shell,* 43 F.3d at 366; *see also Cash,* 107 F.3d at 641; *Buttram,* 76 F.3d at 901; *Donaho,* 74 F.3d at 897; *Lickteig,* 61 F.3d at 584; *Cooper Tire & Rubber Co.,* 48 F.3d at 371; *Kennedy,* 31 F.3d at 609; *Lutheran Medical Ctr.,* 25 F.3d at 620; *Finley,* 957 F.2d at 621. The court notes that plaintiff Mahon does not direct the court's attention to any language in the Plan rendered meaningless or internally inconsistent by virtue of St. Luke's interpretation of the disability retirement benefits provision. Based on the court's review of the Plan, the court finds that St. Luke's interpretation of the Plan does not render any language in the plan meaningless or internally inconsistent.

### 3. Interpretation consistent with earlier interpretations

As for the third *Shell* factor, *see Shell,* 43 F.3d at 366, there is no evidence that St. Luke's has not interpreted the Plan's disability retirement benefits provision at issue here consistently in other cases.

### 4. Interpretation of the Plan consistent with its goals

Another *Shell* factor involves analyzing whether St. Luke's interpretation of the Plan was consistent with the Plan's purpose. *See Shell,* 43 F.3d at 366; *see also Cash,* 107 F.3d at 641; *Buttram,* 76 F.3d at 901; *Donaho,* 74 F.3d at 897; *Lickteig,* 61 F.3d at 584; *Cooper Tire & Rubber Co.,* 48 F.3d at 371; *Kennedy,* 31 F.3d at 609; *Lutheran Medical Ctr.,* 25 F.3d at 620;

*Finley,* 957 F.2d at 621. The stated purpose and intent of the Plan is to "provide retirement benefits or other benefits to such Employees of the Employer and their Beneficiaries who qualify under the terms of the Plan. This Plan shall be for the exclusive benefit of such persons." The 1993 Plan, Pl.'s ex. A., § 1.3, p. 1, App. at 1. Because the stated goal of the Plan is to provide benefits only to St. Luke's employees and their beneficiaries that qualify under the Plan, St. Luke's decision to deny disability retirement benefits to plaintiff Mahon because she did not qualify for such benefits was in keeping with the purpose of the Plan. Therefore, the court finds that St. Luke's interpretation of the Plan is consistent with the Plan's purpose.

### 5. Interpretation of the Plan consistent with ERISA

The final *Shell* factor is whether St. Luke's interpretation of the Plan's disability retirement benefits provision conflicts with the substantive or procedural requirements of ERISA. *See Shell,* 43 F.3d at 366; *see also Cash,* 107 F.3d at 641; *Buttram,* 76 F.3d at 901; *Donaho,* 74 F.3d at 897; *Lickteig,* 61 F.3d at 584; *Cooper Tire & Rubber Co.,* 48 F.3d at 371; *Kennedy,* 31 F.3d at 609; *Lutheran Medical Ctr.,* 25 F.3d at 620; *Finley,* 957 F.2d at 621. Here, plaintiff Mahon has not identified any substantive or procedural requirements of ERISA that are in conflict with St. Luke's interpretation of the Plan's disability retirement benefits provision. Based on the court's review of the Plan, the court finds that the Plan satisfies all ERISA requirements.

## III. CONCLUSION

The court concludes based on the undisputed facts and its evaluation of the *Shell* factors, that St. Luke's interpretation of the Plan's disability retirement benefits

provision is not unreasonable. Therefore, the court grants St. Luke's motion for summary judgment and denies Mahon's motion for summary judgment.

IT IS SO ORDERED.