**Basil SHELL and Marlene Shell, Appellees,**

v.

**AMALGAMATED COTTON GARMENT and Allied Industries Fund and Amalgamated Life Insurance, Appellants.**

**No. 94–2060.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 14, 1994.

Decided Dec. 19, 1994.

Mark Philip Wine, Minneapolis, MN, argued (Mark P. Wine, Linda J. Soranno and Christopher J.A. Curry, on the brief), for appellants.

Frank J. Rajkowski, St. Cloud, MN, argued, for appellees.

Before BEAM, Circuit Judge, FRIEDMAN,* Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

In mid–1990, Basil Shell was very seriously injured in a car accident. His medical expenses eventually totaled approximately $140,000, for which he submitted claims to his insurance plan. Although the insurance plan did not dispute his eligibility for payment of those claims, it insisted that before the claims would be processed and paid, Mr. Shell would have to execute a document granting a "primary lien" to the insurance plan on any proceeds that he might obtain

"as a result of any judgement [*sic*], settlement or other means, of any claim or cause of action" against a third party. Mr. Shell declined to execute the document, whereupon, in mid–1991, the insurance plan refused to process his claims.

About six weeks later, Mr. Shell and his wife sued the insurance plan in state court, asserting a claim under Mr. Shell's health insurance contract. The insurance plan removed the case to federal district court, since the insurance contract was subject to the Employee Retirement Income Security Act (ERISA), *see* 29 U.S.C. §§ 1001–1461. On a motion for partial summary judgment, the district court held in September, 1992, that the express terms of the insurance contract did not require Mr. Shell to execute the lien document sought. The district court held that the express terms of the insurance contract did allow the right of subrogation to the insurance plan but that that right did not accrue until *after* Mr. Shell recovered a judgment or settlement from a third party. The district court therefore ordered the insurance plan to process Mr. Shell's claims.

In mid-November, 1992, with the knowledge of the insurance plan, Mr. Shell agreed to settle, for $500,000, all of his claims against third parties related to the accident. At that point, the insurance plan had actually paid approximately $13,350 of Mr. Shell's medical expenses. The settlement documents specified that $63,300 would be held in escrow, pending resolution of the insurance plan's subrogation claim. Between mid-November and mid-December, 1992, when Mr. Shell finally executed all of the settlement documents, the insurance plan paid approximately $48,525 more for medical expenses. After mid-December, 1992, the insurance plan paid approximately $27,600 more for medical expenses.

On cross-motions for summary judgment, the district court held that the insurance plan's subrogation right applied only to the amount paid before mid-November, 1992, when Mr. Shell agreed to settle his claims against third parties. The insurance plan appeals, arguing that it is entitled to subro-

* The HONORABLE DANIEL M. FRIEDMAN, Senior Circuit Judge, United States Court of Appeals for the Federal Circuit, sitting by designation.

gation with respect to the entire amount paid toward Mr. Shell's medical expenses (approximately $89,475). We affirm the judgment of the district court.[1]

## I.

The insurance contract states that it "shall control ... the conditions which [eligible persons] must satisfy to become covered" and that "[t]his Plan is the legal document governing all benefits." ("Plan" in the insurance contract refers to the contract itself, as distinguished from the entity administering the insurance program, which is referred to as the "Fund" in the insurance contract. For the sake of simplicity, however, we refer to the actual documents as the insurance contract and to the administering entity as the insurance plan.) The insurance contract specifies that "[w]hen benefits are paid ... under the terms of this Plan, the Fund shall be subrogated to the rights of recovery of [the insured person] against any person or entity who is liable for the injury ... for which the benefits were paid.... Such subrogation rights shall extend only to the recovery by the Fund of the benefits it has paid." Under the insurance contract, the board of trustees of the plan "shall have the exclusive right to interpret any and all of the provisions of this Plan and to determine any questions arising thereunder or in connection with administration of this Plan."

The insurance contract gives the plan the power to interpret the contract's provisions. Judicial review of such an interpretation is centered, therefore, on the question of whether the plan's interpretation of the insurance contract is an abuse of discretion. *See, e.g., Kennedy v. Georgia–Pacific Corp.,* 31 F.3d 606, 609 (8th Cir.1994). We have variously defined an interpretation that would be an abuse of discretion as being "extremely unreasonable," *id.;* "virtually" the same as arbitrary and capricious, *Lutheran Medical Center v. Contractors, Laborers, Teamsters, and Engineers Health and Welfare Plan,* 25 F.3d 616, 620 n. 2 (8th Cir. 1994); and " 'extraordinarily imprudent,' " *Cox v. Mid–America Dairymen, Inc.,* 965 F.2d 569, 572 (8th Cir.1992), quoting G.G.

Bogert and G.T. Bogert, *The Law of Trusts and Trustees* § 560 at 204 (rev. 2d ed. 1980). We review *de novo* the district court's conclusion in that respect. *See, e.g., Kennedy,* 31 F.3d at 609.

The plan's interpretation of the insurance contract is that the subrogation provisions allow the plan to assert a right to reimbursement from the settlement proceeds for all medical benefits that it pays for Mr. Shell, regardless of when the actual payment is made. In determining whether that interpretation is an abuse of the plan's discretion, we consider "whether the interpretation contradicts the plan's clear language, whether the interpretation renders any plan language internally inconsistent or meaningless, whether the interpretation is consistent with earlier interpretations, whether the interpretation is consistent with the plan's goals, and whether the plan satisfies ERISA requirements." *Id.*

## II.

In holding that the plan's interpretation of the insurance contract's subrogation provisions was an abuse of discretion, the district court noted that the plain language of the insurance contract limits the plan's recovery to the amount it "has paid," rather than to any amount it "has paid or will pay." The district court also noted that the rights of a party with a subrogation interest in an injured person's claim are no greater than the rights of the injured person himself and concluded, therefore, that once the injured person settles a claim and thus extinguishes his own right to further pursuit of that claim, the rights of the party with the subrogation interest in the claim are extinguished as well. The district court stated that an interpretation allowing the party with a subrogation interest to recover for amounts paid by it *after* a settlement would not only contradict the plain language of the insurance contract but would also render the term "subrogation" meaningless. We agree with the analysis of the district court.

We observe, as well, that according to a letter from Mr. Shell's lawyer to the insurance plan's lawyer, the settlement proceeds

---

**1.** The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

were not only for medical expenses for Mr. Shell but for "loss of means of support" for Mr. Shell's wife and daughter (and, presumably, for Mr. Shell's own loss of past and future income). We do not have a copy of the settlement documents and therefore cannot draw any conclusions with respect to how much of the settlement proceeds was to be considered applicable to medical expenses. *See, e.g., Kennedy v. Georgia–Pacific Corp.,* 31 F.3d 606, 611 (8th Cir.1994). Finally, we note that, unlike some other insurance contracts, the contract in this case has no reimbursement language separate from the subrogation provisions. *See, e.g., McIntosh v. Pacific Holding Co.,* 992 F.2d 882, 884 (8th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 441, 126 L.Ed.2d 375 (1993).

## III.

For the reasons stated, we affirm the judgment of the district court.