_____

No. 95-2372
_____

Jerry Buttram; Juston Buttram,   *
                           *
     Appellants,   *
                           *
   v.   *
                           *
Central States, Southeast and   *
Southwest Areas Health and   *
Welfare Fund,   *
                           *
     Appellee.   *
                           *  Appeal from the United States
-------------------   *  District Court for the
                           *  Eastern District of Missouri.
Central States, Southeast and   *
Southwest Areas Health and   *
Welfare Fund, Trustees of an   *
Illinois Trust,   *
                           *
     Appellee,   *
                           *
   v.   *
                           *
Ford Motor Company, a Delaware   *
corporation; Elmer C.   *
Oberhellmann,   *
                           *
     Defendants,   *
                           *
Jerry Buttram; Juston Buttram,   *
                           *
     Appellants.   *

_____

Submitted:  December 12, 1995

Filed:  February 16, 1996
_____

Before MAGILL, GOODWIN,[*] and MURPHY, Circuit Judges.
_____

*THE HONORABLE ALFRED T. GOODWIN, United States Circuit
Judge for the Ninth Circuit, sitting by designation.

MAGILL, Circuit Judge.

Jerry Buttram appeals the district court's[1] grant of summary judgment to Central States in this action governed by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B). Buttram alleged that Central States improperly denied him reimbursement for home nursing care under Central States' employee health benefits plan. Because the benefits plan gave the plan administrator discretionary interpretive authority and the administrator's plan interpretation denying benefits was reasonable, we affirm.

## I.

Jerry Buttram's son, Juston, suffered a severe spinal cord injury in an automobile accident on August 17, 1984, leaving him with quadriplegia. Juston received medical treatment at Freeman Hospital and St. John's Hospital in Missouri and at Craig Rehabilitation Hospital in Colorado, before returning home in 1985. Because Jerry Buttram's employer contributed to Central States' Health and Welfare Fund, Buttram was reimbursed $226,083.45 through February 1989 to cover the costs of Juston's hospitalization and institutional care.

Jerry Buttram asked Central States to pay for home nursing care in 1985 and again in late 1987, but in 1988 Central States denied this request. Buttram was entitled to three levels of review of this decision. The first-level appeal was initiated by the Buttrams and apparently denied; although Central States normally offers a written explanation to the applicant and notifies

---

[1]The Honorable George Gunn, United States District Judge for the Eastern District of Missouri, adopting the review and recommendation of the Honorable William S. Bahn, United States Magistrate Judge for the Eastern District of Missouri.

the applicant of the right to further appeal this decision, there is no proof that such notice was ever sent to Buttram. Because Buttram did not receive notice of his right to further review, his claims were not reviewed at a second-level appeal.

Nothing more was heard on this issue until 1993. In the interim, Buttram filed suit in 1989 against Central States, arguing, inter alia, that Central States impermissibly denied reimbursement to the Buttrams for the cost of renovations to their home and van, needed to accommodate Juston. In 1993, Buttram amended this complaint to include a claim for reimbursement for home nursing services provided by Virginia Buttram, Juston's mother. These services included help with hygiene, dressing, eating, and other daily living acts.

The magistrate judge ordered Buttram to pursue administrative remedies and submit his claims to the plan trustees. In evaluating the claim for benefits, the plan trustees relied on two reports, dated September 9, 1993 and February 3, 1994, written by Dr. W.B. Buckingham, the plan's reviewing physician. Dr. Buckingham noted that "[t]he nature of a spinal cord transection is total and permanent, and there is no known medical or surgical procedure that will restore function below the level of transection." Appellant's App. at 143. Any services rendered after Juston's discharge from Craig Hospital could not restore any function and thus should be considered custodial services. Id. Dr. Buckingham further noted that the care at issue in this case, including help with feeding, dressing, and hygiene, is not generally considered medical treatment, but rather is part of the management of these patients by the family caregivers. Dr. Buckingham analogized to the care given to an infant which, while important to the health of the infant, is not considered to be "medical care" as that term is commonly used.

The plan trustee also reviewed evidence, submitted by Buttram,

that the care given by Virginia Buttram had helped to improve the mental and physical condition of Juston. Specifically, to the extent that the care permitted Juston to leave his home and interact with his surroundings, it ensured that Juston would be able to enjoy psychologically rewarding activities and lead a long and productive life. However, even Dr. Simowitz, one of Juston's treating physicians, conceded that Juston's physical condition was irreversible and that the care given by Virginia Buttram only prevented further debilitation. Dr. Simowitz did note, though, that to the extent that such care prevented disease and infection, it could "broadly" be considered "medical treatment."

On February 22, 1994, the trustees reviewed, and rejected, the claim for home nursing services.[2] The trustees based this decision on Plan Sections 1.24(a)(3) (prohibiting reimbursement for medical care rendered by a patient's family member); Plan Section 4.02 (prohibiting reimbursement for care that is not standard medical care); and, for care given after January 1, 1998, Plan Section 4.16 (prohibiting reimbursement for custodial care, as defined by Plan Section 1.18).[3] The trustees noted that the care given by Virginia

_____

[2]The trustees also denied reimbursement to the Buttrams for the money spent renovating their house and van in order to accommodate Juston's return home. This issue was not pursued on appeal.

[3]Prior to January 1, 1988, custodial care was defined as care rendered to a patient who (1) has a mental or physical disability that is expected to continue for a prolonged period of time; (2) requires a protected controlled environment in an institution; (3) requires assistance and support concerning the essence of daily living; and (4) is not under active and specific medical, surgical, or psychiatric treatment that will reduce the disability to the extent necessary to function outside the protected environment. Plan Section 1.18, reprinted in Appellee's App. at 271.

On February 11, 1988, the plan trustees amended this definition, effective retroactive to January 1, 1988, by deleting the first two requirements. After this date, the prohibition on reimbursement for custodial care was applicable to Juston because

-4-

Buttram was analogous to the care given to an infant, which, although necessary, would not lessen Juston's physical infirmities.

The district court upheld this denial of benefits.[4]  Applying an abuse of discretion standard of review, the district court concluded that Central States' interpretation of its plan to exclude the nursing services was reasonable.  Further, performing a precautionary <u>de novo</u> review of the denial, the court held that the action was proper.  This appeal followed.

## II.

While ERISA itself does not specify the standard of review for a plan administrator's determinations, the Supreme Court has held that where a benefits plan gives the "administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," then a court should review the plan administrator's decision only for abuse of discretion. <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989); <u>see also</u> <u>Cox v. Mid-America Dairymen, Inc.</u>, 965 F.2d 569, 571 (8th Cir. 1992), <u>aff'd after remand</u>, 13 F.3d 272 (8th Cir. 1993).  Because it is undisputed that the benefits plan at issue grants discretionary interpretive authority to the plan trustees,[5] we review the benefits determination for abuse of discretion.

---

institutionalization was no longer an element of custodial care.

[4]The district court did not base the denial of benefits on Plan Section 1.24(a)(3), which prohibits reimbursement for medical care rendered by a family member.

[5]Central States' health benefits plan states that "any construction adopted by the Trustees in good faith shall be binding upon the Union, Employees and Employers.  The Trustees are vested with discretionary and final authority in construing plan documents of the Health and Welfare Fund."  Trust Agreement, Art. IV, § 17.

Buttram offers two arguments in support of overturning the plan administrator's determination. First, he contends that a "less deferential" abuse of discretion standard should be applied because of the presence of procedural irregularities in this case. Second, he argues that the substantive decision denying benefits was an abuse of discretion. We address each argument in turn.

**A.**

In certain situations, factors external to the actual decision on the merits can mandate the application of a less deferential abuse of discretion standard. Under the common law of trusts, which is our guide in reviewing the benefits determinations of ERISA plan trustees, see Bruch, 489 U.S. at 110-11, where the plan trustee labors under a conflict of interest, see Restatement (Second) of Trusts § 187 cmt. d (1959), or where, in the exercise of his power, he acts dishonestly, see id. cmt. f, or from an improper motive, see id. cmt. g, or he fails to use judgment in reaching his decision, see id. cmt. h, the resulting decision may be accorded stricter scrutiny.[6]

---

[6]Although all courts agree that such events trigger a less deferential standard of review, the circuits are split on how this lesser degree of deference actually alters the review process. Some circuits use a "sliding scale" approach, under which a reviewing court will always apply an abuse of discretion standard, but it decreases the deference given to the conflicted administrator's decision in proportion to the seriousness of the conflict. See Doe v. Group Hospitalization & Medical Serv., 3 F.3d 80, 87 (4th Cir. 1993); Van Boxel v. Journal Co. Employees' Pension Fund, 836 F.2d 1048, 1052-53 (7th Cir. 1987).

Other circuits apply a "presumptively void" test, under which a decision rendered by a conflicted plan administrator is presumed to be an abuse of discretion unless the administrator can demonstrate that either (1) under de novo review, the result reached was nevertheless "right," or (2) the decision was not made to serve the administrator's conflicting interest. See Atwood v. Newmont Gold Co., Inc., 45 F.3d 1317, 1323 (9th Cir. 1995) (citing George T. Bogert, Trusts § 95, at 341-42 (6th ed. 1987); Brown v. Blue Cross & Blue Shield of Ala., Inc., 898 F.2d

For this heightened review to apply, the beneficiary must show (1) that a serious procedural irregularity existed, which (2) caused a serious breach of the plan trustee's fiduciary duty to the plan beneficiary.  See Atwood v. Newmont Gold Co., Inc., 45 F.3d 1317, 1323 (9th Cir. 1995).  However, absent material, probative evidence, beyond the mere fact of the apparent irregularity, tending to show that the administrator breached his fiduciary obligation, see id. (requiring plaintiff to come forward with specific evidence of conflict of interest); see also Cuddington v. Northern Ind. Pub. Serv. Co., 33 F.3d 813, 816 (7th Cir. 1994) (same), we will apply the traditional abuse of discretion analysis to discretionary trustee decisions.

Buttram notes that he never received written notice in 1988 when his benefits claim was denied, he never received his second-level appeal, and his third-level appeal took place seven years after his application for benefits; we interpret these claims as alleging that the plan trustees failed to use their judgment in rendering the decision or that their decision was arbitrary or made on a whim.[7]  Buttram further notes that his third-level appeal occurred only after suit had been filed and after the trustees had moved for summary judgment, on the grounds that Buttram was not entitled to benefits.  Buttram contends that the plan trustees

1556, 1566-67 (11th Cir. 1990), cert. denied, 498 U.S. 1040 (1991).

This Circuit has not yet decided which of the two tests to employ.  We do not have occasion to answer the question in this case, however, because we conclude that the procedural irregularities at issue are not sufficiently egregious as to amount to evidence of abuse of discretion.

[7]These procedural irregularities could, in certain situations, also constitute circumstantial evidence of bad faith or improper motives on the part of the plan trustees.  However, Buttram has not contended that the plan trustees acted out of bad faith or improper motives, and so we will confine the discussion to the lack-of-judgment analysis.

-7-

therefore acted under a conflict of interest and that the outcome was a foregone conclusion. Neither of these contentions has merit.

Buttram did not come forward with any evidence establishing that the plan trustees failed to use judgment in rendering their decision. We note first that Buttram could have satisfied this burden by providing material, probative circumstantial evidence that left the court with serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim; see Restatement (Second) of Trust § 187 cmt. h. For example, where the plan trustee does not inquire into the relevant circumstances at issue; where the trustee never offers a written decision, so that the applicant and the court cannot properly review the basis for the decision; or where procedural irregularities are so egregious that the court has a total lack of faith in the integrity of the decision making process, a court may infer that the trustee did not exercise judgment when rendering the decision. Such circumstantial evidence was not offered by Buttram.

Although the procedural irregularities in this case give us pause, they do not demonstrate that the actual decision reached in 1994 was arbitrary or whimsical. Before the plan trustees denied the benefits application in 1994, the plan's medical consultant twice reviewed the files and made extensive findings and recommendations, and the trustees reviewed contrary evidence submitted by the Buttrams in support of their application. Upon rejecting the application for benefits after reviewing the files at the February 22, 1994 meeting, the trustees offered a thorough written opinion. We are not left with a firm conviction that the denial of benefits was the result of an arbitrary decision or whim.

It is important to remember that it is not the existence of procedural irregularities per se that will cause a court to employ a heightened standard of review when evaluating a plan administrator's decision. Rather, those irregularities must have

some connection to the substantive decision reached; i.e., they must cause the actual decision to be a breach of the plan trustee's fiduciary obligations. When, as here, the procedural irregularities do not demonstrate that the actual decision was reached without reflection and judgment, a deferential standard of review is appropriate.

That the trustees conducted the third-level review after Buttram had filed his complaint and after the trustees had moved for summary judgment does not affirmatively show that the plan trustees violated their fiduciary obligations by acting out of self-interest; nor does it show that the result reached was a foregone conclusion. Buttram has not come forward with any evidence beyond the mere fact of the apparent conflict of interest, which on its own is insufficient to warrant heightened review; see Atwood, 45 F.3d at 1323. We agree with the district court that any apparent conflict of interest would not have affected the decision making process for, in this case, the presence of a lawsuit and the specter of immediate judicial review would cause the trustees to be more, not less, scrupulous in carrying out their fiduciary obligations.

Further, Buttram's allegation that the denial of benefits was a foregone conclusion is belied by the record. Between the filing of the summary judgment motion and the administrative decision to deny benefits, the trustees solicited further evidence in this case, receiving reports from both its own medical consultant and from the Buttrams' doctors. The issue was placed on the February 22 meeting and debated at that time, and a thorough written opinion was offered. Buttram has offered no probative evidence that the outcome was a foregone conclusion.

Because there was no evidence that the plan trustees failed to use judgment in reaching their decision or that they labored under a conflict of interest, the substantive decision will be reviewed

under the traditional abuse of discretion analysis.

**B.**

Under an abuse of discretion standard, the plan administrator's plan construction will be upheld, if reasonable. Finley v. Special Agents Mut. Ben. Ass'n, Inc., 957 F.2d 617, 621 (8th Cir. 1992) (citing Bruch, 489 U.S. at 111); see also Restatement (Second) of Trusts § 187 cmt. e (trustee must act within the bounds of reasonable judgment). This Court considers five factors in evaluating reasonableness: (1) whether the interpretation is consistent with the goals of the plan, (2) whether the interpretation renders any plan language meaningless or inconsistent, (3) whether the interpretation conflicts with the requirements of the ERISA statute, (4) whether the administrators have interpreted the words at issue consistently, and (5) whether the interpretation is contrary to the clear language of the plan. Finley, 957 F.2d at 621; see also Lutheran Medical Ctr. v. Contractors Health Plan, 25 F.3d 616, 621-22 (8th Cir. 1994) (applying Finley factors).

In this case, Central States argues that reimbursement for nursing care given by Juston's mother is prohibited because the care was given by a family member (prohibited by Plan Section 1.24(a)(3)),[8] the care amounts to custodial care (prohibited by Plan Section 1.18), and in any event, because it is custodial care, the care is not standard medical care (prohibited

---

[8]Plan Section 1.24(a)(3) applies only to medical care given by a family member. Because Central States argues that the care at issue is custodial, and not medical, care, this provision only applies in the alternative; that is, the provision applies only if the court disagrees with Central States and determines that the care given in fact was medical care.

-10-

by Plan Section 4.02).

The denial of post-1988 benefits was clearly not an abuse of discretion. First, the care given meets the definition of custodial care, because Juston's injury will last the remainder of his life, there is little hope for extensive recovery, and the services rendered concern the basic activities of daily living. Second, the trustees credited the conclusions of its reviewing physician that the care at issue, because it concerned help with hygiene, dressing, and eating, could not be considered medical care, but was rather more akin to the care given by a mother to a newborn child, and thus is not covered by the plan; see Plan Section 4.02 (limiting coverage to standard medical care).[9]

The denial of pre-1988 benefits was also not an abuse of discretion, although this is a closer question because the custodial care limitation is not applicable.[10] However, Plan Section 4.02, which prohibits reimbursement for care that is not standard medical care, supports the committee's determination. As Dr. Buckingham noted, the care at issue in this case is not generally considered to be standard medical care. In light of the plan's policy of not providing for long-term nonmedical care, this decision is not an abuse of discretion. Alternatively, even if the care were standard medical care, § 1.24(a)(3), which prohibits reimbursement for care given by a family member, would apply.

The district court correctly noted that this plan

---

[9]The trustees apparently rejected the conclusions of Juston's treating physician, Dr. Simowitz, that, accepting that preventing debilitation is the same as reducing the patient's disability, the care at issue may broadly be defined as medical treatment.

[10]As noted above, the custodial care limitation was not relied upon by the trustees in rejecting the application for pre-1988 benefits.

interpretation meets the five _Finley_ factors.  The decision to deny coverage is "consistent with the Plan's goal of not providing long-term coverage for non-medical care to a person suffering from an irreversible injury;[11] does not render Plan language meaningless or internally inconsistent; does not conflict with ERISA; and is not contrary to the clear language of the Plan.  Furthermore, there is no indication that the Trustees have ever interpreted this provision differently."  _Review and Recommendation_ at 16-17, _reprinted in_ Appellant's App. at 193, 208-09 (adopted by the district court, _see_ Mem. and Order, March 22, 1995, _reprinted in_ Appellant's App. at 235).

## III.

We conclude that the decision of the plan trustees denying benefits was reasonable.  Accordingly, we affirm.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[11]The Buttrams submitted evidence that the care given by Virginia Buttram helped Juston to more fully participate in daily living activities.  This misses the point.  While this care may be necessary, the plan was not intended to cover nonmedical care to a person suffering from an irreversible injury.  Because Juston's physical condition at this point is irreversible, Virginia Buttram's services could not reduce the extent of the physical injury.  The expenses incurred in this case, while perhaps necessitated by the injuries received by Juston, are nonetheless collateral to those injuries.  They do not fall within the ambit of the health benefits plan.

-12-