Paul **ALLISON**, Plaintiff,

v.

**WELLMARK, INC., d/b/a/ Blue Cross and Blue Shield of Iowa, Defendant.**

**No. C00–3015–MWB.**

United States District Court, N.D. Iowa, Central Division.

July 30, 2001.

Raymond P. Drew of Drew & Miller, P.C., Hampton, IA, for Plaintiff.

David Swinton of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, P.C., Des Moines, IA, for Defendant.

## MEMORANDUM OPINION AND ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. *INTRODUCTION AND BACKGROUND* ....................................1025

 A. *Procedural Background* ............................................1025

B. Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1025

II. LEGAL ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1027
 A. Standards For Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1027
 B. Standard Of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1028
 C. Wellmark's Interpretation Of The Plan . . . . . . . . . . . . . . . . . . . . . . . . . . .1029
 D. Analysis of Shell Factors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1030
 1. Interpretation consistent with clear language of the Plan . . . . . . . . . . . .1030
 2. Interpretation renders plan language internally inconsistent . . . . . . . . .1031
 3. Interpretation consistent with earlier interpretations . . . . . . . . . . . . . . .1032
 4. Interpretation of the Plan consistent with its goals . . . . . . . . . . . . . . . .1032
 5. Interpretation of the Plan consistent with ERISA . . . . . . . . . . . . . . . . .1032

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1034

## I. INTRODUCTION AND BACKGROUND

### A. Procedural Background

On February 3, 2000, plaintiff Paul J. Allison filed a petition for declaratory judgment in the Iowa District Court In And For Franklin County seeking a declaration that defendant Wellmark, Inc. d/b/a Blue Cross and Blue Shield of Iowa ("Wellmark") had no right of subrogation to the proceeds of plaintiff Allison's underinsured motorist coverage. Defendant Wellmark removed this case to this court on February 18, 2000, pursuant to 28 U.S.C. § 1441. On February 28, 2001, defendant Wellmark filed its answer and prayed for a declaration from the court that Wellmark's subrogation rights extend to plaintiff Allison's underinsured motorist coverage. On April 12, 2001, plaintiff Allison filed his Motion For Summary Judgment (# 10) and defendant Wellmark filed its Motion For Partial Summary Judgment (# 16). The parties' cross-motions for summary judgment center on the nub of this case, whether defendant Wellmark is entitled to subrogation of plaintiff Allison's right to recovery of underinsured motorist coverage proceeds.

The court heard telephonic oral arguments on the parties' respective motions for summary judgment on July 26, 2001. At the oral arguments, plaintiff Allison was represented by counsel Raymond P. Drew of Drew & Miller, P.C., Hampton, Iowa. Defendant Wellmark was represented by counsel David Swinton of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, P.C., Des Moines, Iowa. The court turns first to a discussion of the undisputed facts as shown by the record and the parties' submissions, then to consideration of the standards applicable to motions for summary judgment, and, finally, to the legal analysis of whether either party is entitled to summary judgment.

### B. Factual Background

The record reveals that the following facts are undisputed. Plaintiff Paul J. Allison was an employee of the Curries Company on June 3, 1990. As an employee of the Curries Company, Allison had health care benefits through the Curries Company health benefits plan ("The Plan"). The Plan is self-funded by the Curries Company and is maintained pursuant to an Alliance Select Benefit Certificate. Defendant Wellmark provides certain administrative services and stop-loss coverage to the Curries Company with respect to the Plan pursuant to an Administrative Services and Financial Agreement. The Plan is an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"). Plaintiff Allison was furnished with a copy of the Plan.

On June 3, 1999, plaintiff Allison was severely injured in an automobile accident. Plaintiff Allison was a passenger in the automobile at the time of the accident. The accident was caused by the driver of the automobile in which Allison was a passenger. The driver of the automobile carried automobile insurance with the Hartford Insurance Company with a liability limit of $10,000. Plaintiff had automobile insurance with the Prudential Insurance Company which provided underinsured motorist coverage in the amount of $100,000.

As a result of the injuries sustained in the accident, plaintiff Allison incurred medical expenses in excess of $135,000. Plaintiff Allison's total damages for injuries sustained in the accident exceed the amount of automobile insurance coverage available to him. Following the accident, Allison made a demand on the Prudential Insurance Company for the limits of his underinsured motorist coverage. The Prudential Insurance Company subsequently paid to Allison underinsured motorist benefits in the amount of $100,000.

Defendant Wellmark has paid $126,067.17 in benefits for the medical expenses incurred by Allison as a result of the accident. The Plan contains the following provision with respect to subrogation:

☐ **SUBROGATION**

Once you receive benefits under this certificate arising from an illness or injury, we will assume any legal right you have to collect compensation, damages, or any other payment related to the illness or injury, including benefits from any of the following:

☐ The responsible person's insurer.

☐ Uninsured motorist coverage.

☐ Underinsured motorist coverage

☐ Other insurance coverage.

You and your family agree to all of the following:

☐ You will let us know about any potential claims or rights of recovery related to the illness or injury.

☐ You will furnish any information and assistance we determine we will need to enforce our rights under this certificate.

☐ You will do nothing to prejudice our rights and interests.

☐ You will not compromise, settle, surrender, or release any claim or right of recovery described above, without getting our written permission.

☐ You must reimburse us to the extent of benefit payments made under this certificate if payment is received from the other party or parties.

You and your covered family member(s) must notify us if you have the potential right to receive payment from someone else. You must cooperate with us to ensure that our rights to subrogation are protected.

We reserve the right to offset any amounts owed to us against any future claim settlement amounts.

Curries Company Alliance Select Health Benefits Certificate, Def.'s Ex. C at pp. 46–47. The Plan also confers discretion on Wellmark to interpret the Plan:

☐ **INTERPRETING THIS CERTIFICATE**

We will interpret the provisions of this certificate and determine the answer to all questions that arise under it. We have the administrative discretion to determine whether you meet out written eligibility requirements, or to interpret any other term in this certificate. If any benefit in this certificate is subject to a determination of medical necessity, we will make that *factual* determination.

Our interpretations and determinations are final and conclusive.

Curries Company Alliance Select Health Benefits Certificate, Def.'s Ex. C at pp. 46–47.

Wellmark interprets the Plan's subrogation provision as entitling it to subrogation and reimbursement from the benefits paid to plaintiff Allison by Prudential under his underinsured motorist coverage notwithstanding the fact that plaintiff Allison has not been "made whole" by recovery of compensation for all his injuries and damages.

## II. LEGAL ANALYSIS

### A. Standards For Summary Judgment

This court has considered in some detail the standards applicable to motions for summary judgment pursuant to FED. R.CIV.P. 56 in a number of prior decisions. *See, e.g., Swanson v. Van Otterloo,* 993 F.Supp. 1224, 1230–31 (N.D.Iowa 1998); *Dirks v. J.C. Robinson Seed Co.,* 980 F.Supp. 1303, 1305–07 (N.D.Iowa 1997); *Laird v. Stilwill,* 969 F.Supp. 1167, 1172–74 (N.D.Iowa 1997); *Rural Water Sys. # 1 v. City of Sioux Ctr.,* 967 F.Supp. 1483, 1499–1501 (N.D.Iowa 1997), *aff'd in pertinent part,* 202 F.3d 1035 (8th Cir.2000), *cert. denied,* 531 U.S. 820, 121 S.Ct. 61, 148 L.Ed.2d 28 (2000); *Tralon Corp. v. Cedarapids, Inc.,* 966 F.Supp. 812, 817–18 (N.D.Iowa 1997), *aff'd,* 205 F.3d 1347 (8th Cir.2000) (Table op.); *Security State Bank v. Firstar Bank Milwaukee, N.A.,* 965 F.Supp. 1237, 1239–40 (N.D.Iowa 1997); *Lockhart v. Cedar Rapids Community Sch. Dist.,* 963 F.Supp. 805 (N.D.Iowa 1997). Thus, the court will not consider those standards in detail here. Suffice it to say that Rule 56 itself provides, in pertinent part, as follows:

Rule 56. Summary Judgment

(a) For Claimant. A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

FED.R.CIV.P. 56(a)–(c) (emphasis added). Applying these standards, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.,* 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). As to whether a factual dispute is "material," the Supreme Court has explained, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Beyerbach v.*

*Sears,* 49 F.3d 1324, 1326 (8th Cir.1995); *Hartnagel,* 953 F.2d at 394. If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.,* 113 F.3d 1484, 1492 (8th Cir.1997). In reviewing the record, the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348; *Quick,* 90 F.3d at 1377 (same). With these standards in mind, the court turns to consideration of the parties' cross-motions for summary judgment.

### B. Standard Of Review

■ A court normally gives trustees considerable leeway to interpret and to apply health plan rules, setting aside those trustee decisions only if they are arbitrary, capricious, or an abuse of discretion. *Baxter v. Lynn,* 886 F.2d 182, 187 (8th Cir. 1989). The United States Supreme Court, however, has instructed that this deferential standard of review is appropriate only where the "benefit plan" itself gives the trustees "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *see Riedl v. General Am. Life Ins. Co.,* 248 F.3d 753, 755 (8th Cir.2001); *Lynn,* 886 F.2d at 187. In *Bruch,* the Supreme Court held that, under ERISA, absent the express delegation of discretion to a plan trustee, a court should conduct a *de novo*

review of the trustee's benefit determination. *Bruch,* 489 U.S. at 115, 109 S.Ct. 948; *Riedl,* 248 F.3d at 755; *see Jacobs v. Pickands Mather & Co.,* 933 F.2d 652, 656 (8th Cir.1991). Wellmark asserts that the Plan provides it with the "discretionary authority" to determine eligibility or construe the terms of the Plan and therefore the court's review here is under the abuse of discretion standard. Plaintiff Allison, on the other hand, contends that the court should conduct a *de novo* review of Wellmark's interpretation of the Plan.

■ Here, the Plan gives Wellmark the power to interpret the Plan's provisions:

**INTERPRETING THIS CERTIFICATE**

We will interpret the provisions of this certificate and determine the answer to all questions that arise under it. We have the administrative discretion to determine whether you meet out written eligibility requirements, or to interpret any other term in this certificate. If any benefit in this certificate is subject to a determination of medical necessity, we will make that factual determination. Our interpretations and determinations are final and conclusive.

Curries Company Alliance Select Health Benefits Certificate, Def.'s Ex. C at pp. 46–47.[1] The Eighth Circuit Court of Appeals has held that a district court should review ERISA governed plans under a "deferential abuse of discretion" standard where the plans have contained language comparable to that found in the Plan at issue. *See Shell v. Amalgamated Cotton Garment, Allied Indus. Fund,* 43 F.3d 364, 366 (8th Cir.1994) (insurance contract provided that the board of trustees of the plan "shall have the exclusive right to interpret any and all of the provisions of this Plan

---

**1.** The Plan states that *"We, us* and *our* refer to Wellmark Blue Cross and Blue Shield of Iowa."* Alliance Select Health Benefits Certificate, Def.'s Ex. C at p. 3.

and to determine any questions arising thereunder or in connection with administration of this Plan."); *Cox v. Mid–America Dairymen,* 13 F.3d 272, 274 (8th Cir. 1993) ("In case of any factual dispute hereunder, the Retirement Committee shall resolve such dispute giving due weight to all evidence available to it. The Retirement Committee shall interpret the Plan and shall determine all questions arising in the administration, interpretation and application of the Plan."); *Brumm v. Bert Bell NFL Retirement Plan,* 995 F.2d 1433, 1437 (8th Cir.1993) (giving the Board discretionary power "to define and amend the terms of the Plan and Trust, to construe the Plan and Trust and to reconcile inconsistencies therein."). As the Plan contains an express delegation of discretion to Wellmark, the court will employ the abuse of discretion standard here in reviewing Wellmark's interpretation of the Plan. The Eighth Circuit Court of Appeals has defined an interpretation that would be an abuse of discretion as

being "extremely unreasonable," [*Kennedy v. Georgia–Pacific Corp.,* 31 F.3d 606, 609 (8th Cir.1994) ]; "virtually" the same as arbitrary and capricious, *Lutheran Medical Center v. Contractors, Laborers, Teamsters, and Engineers Health and Welfare Plan,* 25 F.3d 616, 620 n. 2 (8th Cir.1994); and " 'extraordinarily imprudent,' " *Cox v. Mid–America Dairymen, Inc.,* 965 F.2d 569, 572 (8th Cir.1992), quoting G.G. Bogert and G.T. Bogert, *The Law of Trusts and Trustees* § 560 at 204 (rev.2d ed.1980).

*Shell v. Amalgamated Cotton Garment,* 43 F.3d 364, 366 (8th Cir.1994).

### C. Wellmark's Interpretation Of The Plan

Wellmark interprets the subrogation provision of the Plan as providing it with a right to reimbursement from the benefits from all underinsured motorist coverage received by Allison for the medical benefits

that the Plan has provided Allison for the injuries he sustained in the automobile accident. The Eighth Circuit Court of Appeals has instructed that:

In determining whether that interpretation is an abuse of the plan's discretion, we consider "whether the interpretation contradicts the plan's clear language, whether the interpretation renders any plan language internally inconsistent or meaningless, whether the interpretation is consistent with earlier interpretations, whether the interpretation is consistent with the plan's goals, and whether the plan satisfies ERISA requirements."

*Shell,* 43 F.3d at 366 (quoting *Kennedy v. Georgia–Pacific Corp.,* 31 F.3d 606, 609 (8th Cir.1994)); *accord Cooper Tire & Rubber Co. v. St. Paul Fire & Marine Ins. Co.,* 48 F.3d 365, 371 (8th Cir.), *cert. denied,* 516 U.S. 913, 116 S.Ct. 300, 133 L.Ed.2d 205 (1995); *see Cash v. Wal–Mart Group Health Plan,* 107 F.3d 637, 641 (8th Cir.1997) (interpreting plan in context of a denial of benefits claim); *Buttram v. Central States, S.E. and S.W. Areas Health and Welfare Fund,* 76 F.3d 896, 901 (8th Cir.1996) (same); *Donaho v. FMC Corp.,* 74 F.3d 894, 897 (8th Cir.1996) (same); *Lickteig v. Business Men's Assur. Co. of Am.,* 61 F.3d 579, 584 (8th Cir.1995) (same); *Lutheran Medical Ctr. v. Contractors, Laborers, Teamsters and Engineers Health and Welfare Plan,* 25 F.3d 616, 620 (8th Cir.1994) (same); *Brumm v. Bert Bell NFL Retirement Plan,* 995 F.2d 1433, 1438 (8th Cir.1993) (same); *Finley v. Special Agents Mut. Benefit Ass'n,* 957 F.2d 617, 621 (8th Cir.1992) (same). Therefore, the court will apply the "abuse of discretion" standard of review and uphold Wellmark's decision that the Plan's subrogation provision provides it the right of subrogation against, and reimbursement from, the proceeds of Allison's underinsured motorist coverage unless its decision was extraordinarily imprudent or extremely un-

reasonable. .With this standard in mind, the court turns to the task of determining whether Allison's underinsured motorist coverage benefits are subject to subrogation.

### D. Analysis of Shell Factors

### 1. Interpretation consistent with clear language of the Plan

 The first *Shell* factor the court will consider is whether Wellmark's interpretation of the Plan contradicts clear language in the Plan. *See Shell,* 43 F.3d at 366; *see also Cash,* 107 F.3d at 641; *Buttram,* 76 F.3d at 901; *Donaho,* 74 F.3d at 897; *Lickteig,* 61 F.3d at 584; *Cooper Tire & Rubber Co.,* 48 F.3d at 371; *Kennedy,* 31 F.3d at 609; *Lutheran Medical Ctr.,* 25 F.3d at 620; *Finley,* 957 F.2d at 621. Plaintiff Allison asserts that the language of the plan is ambiguous because it does not "describe whose underinsured motorist coverage they are talking about." Plaintiff's Br. In Support Of Pl.'s Mot. For Summary Judgment at p. 9. With respect to the question of subrogation, the Plan provides that:

☐ **SUBROGATION**

Once you receive benefits under this certificate arising from an illness or injury, we will assume any legal right you have to collect compensation, damages, or any other payment related to the illness or injury, including benefits from any of the following:

☐ The responsible person's insurer.

☐ Uninsured motorist coverage.

☐ Underinsured motorist coverage

☐ Other insurance coverage.

You and your family agree to all of the following:

☐ You will let us know about any potential claims or rights of recovery related to the illness or injury.

☐ You will furnish any information and assistance we determine we will need to enforce our rights under this certificate.

☐ You will do nothing to prejudice our rights and interests.

☐ You will not compromise, settle, surrender, or release any claim or right of recovery described above, without getting our written permission.

☐ You must reimburse us to the extent of benefit payments made under this certificate if payment is received from the other party or parties.

You and your covered family member(s) must notify us if you have the potential right to receive payment from someone else. You must cooperate with us to ensure that our rights to subrogation are protected.

We reserve the right to offset any amounts owed to us against any future claim settlement amounts.

Curries Company Alliance Select Health Benefits Certificate, Def.'s Ex. C at pp. 46–47.

Wellmark interprets the Plan's subrogation provision as entitling it to subrogation and reimbursement from the benefits paid to plaintiff Allison by Prudential under Allison's underinsured motorist coverage. The court does not find Wellmark's interpretation contrary to the clear language of the Plan. The Plan specifically permits it to "assume *any* legal right you have to collect compensation, damages, or any other payment related to the illness or injury ..." Curries Company Alliance Select Health Benefits Certificate, Def.'s Ex. C at pp. 46–47 (emphasis added). The Plan then goes on to specifically include within its subrogation provision benefits received from any underinsured motorist coverage. It is thus clear that the subrogation provision includes any underinsured motorist coverage, including that contained in a cov-

ered individuals own automobile insurance policy.[2] Wellmark's interpretation of this provision is not contrary to the clear language of the Plan.

## 2. Interpretation renders plan language internally inconsistent

The second *Shell* factor requires the court to consider whether Wellmark's interpretation renders any language of the Plan meaningless or internally inconsistent. *See Shell,* 43 F.3d at 366; *see also Cash,* 107 F.3d at 641; *Buttram,* 76 F.3d at 901; *Donaho,* 74 F.3d at 897; *Lickteig,* 61 F.3d at 584; *Cooper Tire & Rubber Co.,* 48 F.3d at 371; *Kennedy,* 31 F.3d at 609; *Lutheran Medical Ctr.,* 25 F.3d at 620; *Finley,* 957 F.2d at 621. The court notes that plaintiff Allison does not direct the court's attention to any language in the Plan rendered meaningless or internally inconsistent by virtue of Wellmark's inter-

2. Plaintiff Allison contends that permitting the Plan subrogation and reimbursement from the benefits paid to plaintiff Allison by Prudential under Allison's underinsured motorist coverage in this case would lead to unjust enrichment. In support of this theory, Allison cites the court to the federal district court opinion in *Airco Industrial Gases v. Teamsters Health and Welfare Pension Fund of Philadelphia & Vicinity,* 618 F.Supp. 943, 945 (D.Del.1985), *rev'd in part on other grounds,* 850 F.2d 1028 (3d Cir.1988). *Airco* concerned an employer's suit to recover nearly seven years worth of erroneous overpayments to a multiemployer employee benefit plan. The complaint in *Airco* alleged four distinct causes of action: (1) an action under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185; (2) an action under section 302 of the LMRA, 29 U.S.C. § 186; (3) an action under section 403(c) of ERISA, 29 U.S.C. § 1103(c) (1982); and (4) an action under the Delaware common law of unjust enrichment. On cross-motions for summary judgment, the district court held that Airco had no express or implied statutory cause of action under LMRA or ERISA. It further held, however, that Airco could maintain an action to recover its erroneous overpayments under "the federal common law of unjust enrichment." *Airco Industrial Gases,* 618 F.Supp. at 945. Thus, the *Airco* decision did not concern a subrogation provision in a employee welfare benefit program. Moreover, in a case concerning a subrogation provision, application of this federal common law has been rejected. *See Harris v. Harvard Pilgrim Health Care, Inc.,* 208 F.3d 274, 278–79 (1st Cir.2000). The court in *Harris* observed:

> Assuming, without deciding, that the courts may supplement ERISA by formulating federal common law "when 'necessary to ef-

fectuate the purposes of ERISA,' " *United McGill,* 154 F.3d at 171 (citation omitted); *see Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), in our view forfending against "unjust enrichment" is too amorphous a concept to warrant wholesale importation of the common-fund doctrine into an otherwise unambiguous ERISA plan. We explain.

"A primary purpose of ERISA is to ensure the integrity and primacy of the written plans ... [so that] the plain language of an ERISA plan should be given its literal and natural meaning." *Health Cost Controls,* 139 F.3d at 1072 (citing *Burnham v. Guardian Life Ins. Co.,* 873 F.2d 486, 489 (1st Cir.1989)) (emphasis added). Against this plain legislative purpose, if the ERISA plan expressly provides that its members are obligated to reimburse the plan for "the value of services provided, arranged, or paid for," we do not think it can be considered "unfair" to require plan members to abide by the agreement. *See Ryan,* 78 F.3d at 127 (" 'Enrichment is not "unjust" where it is allowed by the express terms of the ... plan.' ") (citation omitted); *cf. Pierce v. Christmas Tree Shops, Inc.,* 429 Mass. 91, 706 N.E.2d 633, 636 n. 5 (Mass. 1999) (rejecting same argument, under Massachusetts law); *cf. also Health Cost Controls,* 139 F.3d at 1072 (noting that defendant "has not identified to this Court that application of a set-off under a[n] equitable common fund doctrine would advance any explicit statutory purpose of ERISA"). *Harris,* 208 F.3d at 278. The court concludes that any reimbursement to the Plan here is not "unjust" where it is allowed by the express terms of the Plan. *See Ryan ex rel. Capria–Ryan v. Federal Express Corp.,* 78 F.3d 123, 127 (3rd Cir.1996).

pretation of the subrogation provision. Based on the court's review of the Plan, the court finds that Wellmark's interpretation of the Plan does not render any language in the plan meaningless or internally inconsistent.

### 3. Interpretation consistent with earlier interpretations

As for the third *Shell* factor, *see Shell,* 43 F.3d at 366, there is no evidence that Wellmark has not interpreted the Plan's subrogation provision at issue here consistently in other cases.

### 4. Interpretation of the Plan consistent with its goals

The Second *Shell* factor involves analyzing whether Wellmark's interpretation of the Plan was consistent with the Plan's purpose. *See Shell,* 43 F.3d at 366; *see also Cash,* 107 F.3d at 641; *Buttram,* 76 F.3d at 901; *Donaho,* 74 F.3d at 897; *Lickteig,* 61 F.3d at 584; *Cooper Tire & Rubber Co.,* 48 F.3d at 371; *Kennedy,* 31 F.3d at 609; *Lutheran Medical Ctr.,* 25 F.3d at 620; *Finley,* 957 F.2d at 621. The unstated but clear purpose and intent of the Plan is to provide health benefits to the employees of the Curries Company. Because this mission is dependant upon the Plan's continued economic viability, this mission is facilitated by the Plan being reimbursed for payments it has made on behalf of covered employees. *See Bill Gray Enterprises, Inc. Employee Health And Welfare Plan v. Gourley,* 248 F.3d 206, 215 (3rd Cir.2001) (noting that "reimbursement and subrogation rights are vital to ensuring the financial stability of self-funded plans."). Thus, the court finds that Wellmark's interpretation of the Plan is consistent with the Plan's purpose.

### 5. Interpretation of the Plan consistent with ERISA

The final *Shell* factor is whether Wellmark's interpretation of the Plan's subro-gation provision conflicts with the substantive or procedural requirements of ERISA. *See Shell,* 43 F.3d at 366; *see also Cash,* 107 F.3d at 641; *Buttram,* 76 F.3d at 901; *Donaho,* 74 F.3d at 897; *Lickteig,* 61 F.3d at 584; *Cooper Tire & Rubber Co.,* 48 F.3d at 371; *Kennedy,* 31 F.3d at 609; *Lutheran Medical Ctr.,* 25 F.3d at 620; *Finley,* 957 F.2d at 621.

Allison argues that Wellmark's interpretation of the Plan's subrogation provision conflicts with Congress's declaration of policy concerning employee benefit plans and directs the court's attention to Section 2 of ERISA:

§ 1001. Congressional findings and declaration of policy

(a) The Congress finds that the growth in size, scope, and numbers of employee benefit plans in recent years has been rapid and substantial; that the operational scope and economic impact of such plans is increasingly interstate; that the continued well-being and security of millions of employees and their dependents are directly affected by these plans; that they are affected with a national public interest; that they have become an important factor affecting the stability of employment and the successful development of industrial relations; that they have become an important factor in commerce because of the interstate character of their activities, and of the activities of their participants, and the employers, employee information and adequate safeguards concerning their operation, it is desirable in the interests of employees and their beneficiaries, and to provide for the general welfare and the free flow of commerce, that disclosure be made and safeguards be provided with respect to the establishment, operation, and administration of such plans; that they substantially affect the revenues of the United States because they

are afforded preferential Federal tax treatment; that despite the enormous growth in such plans many employees with long years of employment are losing anticipated retirement benefits owing to the lack of vesting provisions in such plans; that owing to the inadequacy of current minimum standards, the soundness and stability of plans with respect to adequate funds to pay promised benefits may be endangered; that owing to the termination of plans before requisite funds have been accumulated, employees and their beneficiaries have been deprived of anticipated benefits; and that it is therefore desirable in the interests of employees and their beneficiaries, for the protection of the revenue of the United States, and to provide for the free flow of commerce, that minimum standards be provided assuring the equitable character of such plans and their financial soundness.

29 U.S.C. § 1001(a). Allison contends that this legislative declaration connotes that Congress passed ERISA with the intent of benefitting employees and not employers. The court, however, notes that this policy statement is totally devoid of any limitations, restrictions, or remarks regarding the right of employee welfare benefit plans governed by ERISA to seek subrogation or reimbursement. Moreover, it must be recognized that the Eighth Circuit Court of Appeals and other federal courts have upheld subrogation provisions in ERISA plans. *See Waller v. Hormel Foods Corp.,* 120 F.3d 138, 140 (8th Cir.1997) (holding that ERISA medical benefits plan's subrogation provision gave plan "first priority" claim to any recovery); *Cooper Tire & Rubber Co. v. St. Paul Fire and Marine Ins. Co.,* 48 F.3d 365 (8th Cir.1995) (holding that plan administrator abused its discretion when it interpreted plan as giving it the right to subrogation with respect to all claims and not just those claims for medical expenses); *see also Gourley,* 248

F.3d at 220 (holding that self-insured health benefit plan was entitled to reimbursement from the uninsured motorist benefits plaintiff insured received); *Wendy's Int'l, Inc. v. Karsko,* 94 F.3d 1010, 1012 (6th Cir.1996) (holding that money received by plan participant pursuant to an uninsured motorist policy was within scope of plan's subrogation provisions); *Cutting v. Jerome Foods, Inc.,* 993 F.2d 1293, 1299 (7th Cir.1993) (holding that ERISA employee benefits plan was subrogated to all claims by covered individual against third party for all payments made by the plan). The court finds that Wellmark's interpretation of the Plan's subrogation provision does not conflict with ERISA's requirements.

In light of the undisputed facts and an evaluation of the *Shell* factors, the court cannot say that Wellmark's interpretation of the Plan's subrogation provision is unreasonable. Therefore, the court concludes that Wellmark's subrogation rights extend to plaintiff Allison's underinsured motorist coverage. The court, however, wishes to note that while constrained by the law under ERISA to reach this conclusion, the court nonetheless finds the result reached here to be unfair. Results in ERISA cases such as this have generated judicial criticism of ERISA by the federal judiciary. *See Corcoran v. United Health-Care, Inc.,* 965 F.2d 1321, 1333, 1338–39 (5th Cir.1992) (noting that "[f]undamental changes such as the widespread institution of utilization review would seem to warrant a reevaluation of ERISA so that it can continue to serve its noble purpose of safeguarding the interests of employees. Our system, of course, allocates this task to Congress, not the courts, and we acknowledge our role today by interpreting ERISA in a manner consistent with the expressed intentions of its creators."); *Andrews–Clarke v. Travelers Ins. Co.,* 984 F.Supp. 49, 53 (D.Mass.1997) (describing the result which ERISA prescribed as "ab-

**1034**

surd" and a "perverse outcome"); *Jordan v. Reliable Life Ins. Co.,* 694 F.Supp. 822, 827, 835 (N.D.Ala.1988) (expressing concern that "[t]he ERISA quicksand is fast swallowing up everything that steps in it or near it. This morass serves as the stage for a theater of the absurd" that "will continue to expand and to preempt everything in its meandering path."); *see generally* Jayne Elizabeth Zanglein, *Closing the Gap: Safeguarding Participants' Rights by Expanding the Federal Common Law of ERISA,* 72 WASH.U.L.Q. 671, 674 (1994); Larry J. Pittman, *ERISA's Preemption Clause and the Health Care Industry: An Abdication of Judicial Law-Creating Authority,* 46 FLA.L.Rev. 355, 357 (1994). This case, thus, becomes yet another example of the glaring need for Congress to amend ERISA to prevent such inequitable results. However, the court's empathy cannot change the terms of the Plan or federal law in order to achieve a more equitable result. Having found no genuine issue of material fact, Wellmark's Motion for Partial Summary Judgment is granted and Allison's Motion for Summary Judgment is denied.

### III. CONCLUSION

The court concludes based on the undisputed facts and its evaluation of the *Shell* factors, that Wellmark's interpretation of the Plan's subrogation provision is not unreasonable. Thus, the court concludes that defendant Wellmark is entitled to subrogation of plaintiff Allison's right to recovery of underinsured motorist coverage proceeds. Therefore, the court grants Wellmark's Motion for Partial Summary Judgment and denies Allison's Motion for Summary Judgment.

**IT IS SO ORDERED.**