# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-4012

_____

| | |
|---|---|
| Lanna J. Meyers, | * |
| | * |
| Appellant, | * |
| | * |
| v. | *  Appeal from the United States |
| | *  District Court for the Western |
| Hartford Life and Accident | *  District of Arkansas. |
| Insurance Company, | * |
| | * |
| Appellee. | * |

_____

Submitted: June 14, 2007
Filed: July 6, 2007

_____

Before LOKEN, Chief Judge, and ARNOLD and COLLOTON, Circuit Judges.

_____

ARNOLD, Circuit Judge.

Lanna Meyers appeals from the order of the district court[1] denying her disability claim under ERISA against Hartford Life and Accident Insurance Company. *See* 29 U.S.C. §§ 1001-1461. The district court, after a trial on a stipulated record, concluded that the applicable insurance policy gave Hartford the discretion to determine a claimant's eligibility for benefits (a conclusion not challenged here), and

_____

[1]The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas.

held that Hartford had not abused its discretion in rejecting Ms. Meyers's claim. We affirm.

Ms. Meyers was employed by Wal-Mart Stores, Inc., for a number of years in a position that the parties agree is properly classified as sedentary. She quit in 2004 and soon thereafter claimed that she was totally disabled within the meaning of her benefits plan, which, as relevant here, requires her to show that she was unable to do the job that she was doing when she quit.

Ms. Meyers has suffered from numerous ailments over the years. Her attending physician, Dr. James Baker, diagnosed her as suffering primarily from Churg-Strauss syndrome, interstitial lung disease, and peripheral neuropathy, with secondary diagnoses (among others) of ocular migraines and lumbar degenerative disc disease. He noted her secondary symptoms as chronic back pain, chronic diarrhea, bladder and bowel incontinence, drop foot, and paresthesia. It was his opinion that Ms. Meyers was unable to stand for more than 10 minutes, sit more than 15 minutes (due to pain and paresthesia), carry more than 20 pounds (due to pain and weakness), or walk without a cane and then no more than 15 minutes. When Hartford asked Dr. Baker why he had put severe sitting limitations on Ms. Meyers but had put no driving limitations on her, he explained that while driving she would simply have to stop and rest at appropriate intervals. When Hartford asked Dr. Baker whether Ms. Meyers could engage in a sedentary occupation, he said that she could not, stating that "patient has other issues with urine and bowel incontinence problems." In a clinic note, Dr. Baker wrote that "Ms. Meyers has become progressively more disabled due to her back pain, intractable diarrhea, as well as her intractable infections which seem to be recurrent."

Ms. Meyers was also seen by Dr. Steven Moon, a neurologist, who performed an MRI that revealed a multilevel degenerative disc disease. He opined that from a strictly objective neurological viewpoint Ms. Meyers could sit for two hours at a time

and was able to perform sedentary work. Dr. Regan Gallaher, a neurosurgeon, reviewed the MRI and said that it did not provide a good explanation for Ms. Meyers's symptoms.

Because of the conflict between the opinions of Dr. Baker and Dr. Moon with respect to whether Ms. Meyers could perform sedentary work, Hartford engaged the services of an independent physician, Dr. Todd Lyon, to assist in the determination of whether Ms. Meyers was disabled. Dr. Lyon reviewed Ms. Meyers's medical records and spoke with Dr. Baker on the telephone. According to Dr. Lyon, Dr. Baker told him that from an objective medical viewpoint there was no evidence that Ms. Meyers was not capable of working at her former job and that "she physically retained the capacity for full time sedentary to light demand work." He did say, however, that he "did not know if Ms. Meyers could tolerate working based solely upon her continual back pain complaints." He did not mention any other condition that would render Ms. Meyers disabled.

Dr. Lyon produced an extensive report that concluded that Ms. Meyers's main subjective complaint was her chronic back pain. (Her Churg-Strauss syndrome, he said, was "not producing symptomology sufficient enough to impair non-physically demanding work.") He noted that she had complained of back pain for upwards of two years before she quit work and that there was no objective medical evidence to confirm her symptoms. He observed, moreover, that it was "highly unlikely that the degenerative disc disease fully explains Ms. Meyers's low back complaints." He also opined that "she would not have the ability for unrestricted standing and walking, nor would she have the ability for repetitive stooping, bending or heavy lifting." He nevertheless concluded that "Lanna Meyers retains the capacity for full-time sedentary to light demand work." Dr. Lyon sent a copy of his report to Dr. Baker, inviting him to make additions or corrections if he thought them necessary and noting that if he did not respond, "I will assume that you essentially agree with my understanding of our conversation." There is no response from Dr. Baker in the record. A few days later,

Hartford denied Ms. Meyers's claim on the ground that she was capable of performing her former job. Ms. Meyers then indicated that she wanted to appeal that decision.

In connection with the appeal, Hartford engaged the services of yet another independent physician, Dr. Jerome Siegel; he examined Ms. Meyers's medical records and spoke with Dr. Baker several times and at length by telephone. Dr. Siegel observed that Ms. Meyers had been treated with increasing doses of narcotics, including a Duragesic patch, Neurontin, and Zanaflex, but nevertheless believed that she was "physically capable of performing sedentary to light physical demand activities," a conclusion in which Dr. Baker concurred. Hartford thereupon denied the appeal.

Ms. Meyers maintained in the district court and on appeal that the combined effect of her multiple medical difficulties rendered her totally disabled. But there is little evidence in the record that Ms. Meyers suffers from any potentially disabling condition aside from the pain that she experiences. There is indeed a good deal of evidence that she has or has had a number of painful conditions, including low back pain, myalgia, and arthralgia; but there is no evidence that the medicine that she takes is not effective in relieving the pain. Drs. Lyon and Siegel, moreover, both noted that Ms. Meyers had complained about pain for quite some time before she quit and had nevertheless been able to work, an assessment with which Dr. Baker agreed. At least four physicians, moreover, concluded that there is no objective evidence supporting Ms. Meyers's subjective complaints of back pain. We observe, in addition, that there is no personal statement in the record from Ms. Meyers about the extent of her pain or when, how often, and how long she experiences it. Though her brief asserts that "on any given typical day" she "wakes up to a life riddled with constant pain and discomfort," there is no record evidence that this is true. Indeed, as we have already said, her own attending physician, Dr. Baker, asserted only that he "did not know if Ms. Meyers would tolerate working and this was based solely upon her continued low back pain."

We review *de novo* the district court's decision that Hartford did not abuse its discretion in denying Ms. Meyers's claim. *Maune v. International Bhd. of Elec. Workers*, 83 F.3d 959, 962 (8th Cir. 1996). In the present circumstances we would be hard-pressed to conclude that Hartford abused its discretion. An abuse of discretion occurs when a decision may properly be called extremely unreasonable, extraordinarily imprudent, or arbitrary and capricious. *Shell v. Amalgamated Cotton Garment*, 43 F.3d 364, 366 (8th Cir. 1994). Here there was considerable medical evidence to support Hartford's action, especially when one considers the highly equivocal nature of Dr. Baker's opinion about whether Ms. Meyers's pain would prevent her from performing the duties of her previous job and his evident conclusion in his conversation with Dr. Lyon that pain was her only potentially disabling condition.

We therefore affirm the judgment of the district court.

_____